# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 5, 2008　　　　Decided March 6, 2009

No. 08-5092

CHARLES BLAINE JONES,
APPELLANT

v.

BEN S. BERNANKE, CHAIRMAN, BOARD OF GOVERNORS,
FEDERAL RESERVE SYSTEM,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:04-cv-01696)

*Michael G. Kane* argued the cause for appellant. With him on the briefs was *David R. Cashdan*.

*John L. Kuray*, Senior Counsel, Board of Governors of the Federal Reserve System, argued the cause for appellee. With him on the brief were *Richard M. Ashton*, Deputy General Counsel, and *Katherine H. Wheatley*, Associate General Counsel. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: SENTELLE, *Chief Judge*, TATEL, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*:  In this employment discrimination case, the district court, finding that the employee had failed to make out a prima facie case of either discrimination or retaliation, granted summary judgment to the employer.  We affirm as to the discrimination claims on the alternative ground that they were not properly before the district court.  But we reverse and remand as to the retaliation claims.  Given that the employer asserted its legitimate, non-retaliatory explanation, our precedent required the district court to abandon its focus on perceived deficiencies in the prima facie case and to proceed instead to the only issue properly before it, i.e., the question of retaliation *vel non*.

**I.**

After working for the Board of Governors of the Federal Reserve System for seven years and earning two promotions during that period, appellant Charles Blaine Jones sought a third promotion to a managerial position in March 1998.  At that time Jones was 49 years old.  Jones's second-level supervisor, Michael Martinson, interviewed several candidates including Jones and selected Heidi Richards, a 34-year-old woman.  Believing Richards to be less qualified for the position than he, Jones complained to Martinson about her selection.  In response Martinson assured Jones that he would soon be promoted to another position.  But receiving no promotion despite Martinson's and other supervisors' repeated assurances, Jones filed an informal complaint with the Board's EEO office in November 1999 and a formal complaint in January 2000.  In his complaint Jones alleged that when the Board denied him promotion to the managerial position in favor of a younger woman, it discriminated against him on the basis of gender in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et*

*seq.*, and age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 633a. During its investigation, the EEO office obtained affidavits from Martinson and other witnesses, including Richards who had by then become Jones's first-level supervisor. On September 22, 2000, at the conclusion of the investigation, Jones sent a letter to the Equal Employment Opportunity Commission (EEOC) requesting a hearing before an administrative law judge. Central to one of the issues before us, he sent a copy of that request to the Board's EEO office.

Approximately one month later, on October 25, Jones received from Richards a draft of his annual performance evaluation for the period September 1999 to October 2000. Although prior evaluations had rated Jones's overall performance as either "outstanding" or "exceptional," the 2000 evaluation reduced his rating to "commendable"—the third of five possible categories and just one level above "marginal." Signed by both Richards and Martinson, the evaluation explained (among other things) that Jones had failed to complete two assigned projects. Jones's supervisors continued to rate his performance as only "commendable" in his 2001, 2002, and 2003 evaluations. Believing these evaluations misrepresented his actual performance, Jones amended his administrative complaint to allege that his supervisors retaliated against him for his complaints of age and gender discrimination by downgrading his annual performance ratings.

The EEOC administrative judge dismissed Jones's discrimination claims for untimely counselor contact. As to the retaliation claims, the administrative judge found insufficient evidence to question the Board's explanation that the 2000–2003 evaluations reflected honest assessments of Jones's performance and so granted summary judgment to the

Board. The Board subsequently adopted the administrative judge's recommendations, dismissed Jones's complaint, and notified him that he had ninety days from receipt of the decision to file a civil action in district court should he choose to do so. *See* 42 U.S.C. § 2000e-16(c) (setting forth ninety-day filing requirement); *Price v. Bernanke*, 470 F.3d 384, 389 (D.C. Cir. 2006) (applying Title VII's ninety-day requirement to ADEA claims).

Jones then filed a timely complaint in the United States District Court for the District of Columbia, alleging that the Board had retaliated against him for his complaints of gender and age discrimination in violation of Title VII and the ADEA. The Board moved to dismiss and for summary judgment. Jones opposed the motion and moved for discovery under Federal Rule of Civil Procedure 56(f). While those motions were pending and nearly a year after the filing of the original complaint, Jones moved to amend his complaint to add the Title VII and ADEA discrimination claims based on his non-promotion. Opposing the motion, the Board argued that the discrimination claims were untimely because Jones had failed to bring them within ninety days of receiving the notice of final agency action.

Without passing on Jones's Rule 56(f) motion, the district court granted in part and denied in part the Board's motion for summary judgment. *See Jones v. Greenspan*, 402 F. Supp. 2d 294, 303 (D.D.C. 2005). Applying the *McDonnell Douglas* burden-shifting framework, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the district court concluded that Jones had satisfied his prima facie burden for his retaliation claims arising from the 2000 evaluation. *Jones*, 402 F. Supp. 2d at 301–02. The district court also concluded that Jones had offered sufficient evidence for a reasonable jury to infer that the evaluation was retaliatory rather than an honest

assessment of Jones's performance. *Id.* As to the 2001–2003 evaluations, however, the court ruled that because Jones had demonstrated no temporal proximity between his protected activity and the adverse evaluations during those years, he failed to satisfy his prima facie burden. *Id.* at 302–03. Thus, although the court denied the Board's summary judgment motion on Jones's retaliation claims arising from his 2000 evaluation, it granted the motion as to the three later evaluations. *Id.* at 303.

Next the district court granted Jones's motion to amend the complaint, allowing him to add his gender and age discrimination claims to the lawsuit. *Jones v. Greenspan*, 445 F. Supp. 2d 53, 58 (D.D.C. 2006). In response the Board filed an answer to the amended complaint and moved to dismiss the new claims or, alternatively, for summary judgment. Jones opposed the motion, again seeking Rule 56(f) discovery. Denying discovery, the district court granted the Board's motion for summary judgment, finding that Jones had failed to establish a prima facie case of discrimination. *Jones v. Bernanke*, 493 F. Supp. 2d 18, 23 (D.D.C. 2007).

Finally the district court revisited its earlier denial of summary judgment on the retaliation claims arising from the 2000 evaluation, concluding this time that Jones had in fact failed to establish a prima facie case of retaliation. *Jones v. Bernanke*, 538 F. Supp. 2d 53, 56 (D.D.C. 2008). The court explained that its original denial of summary judgment "was at least partially based on the incorrect assumption that the plaintiff proved its prima facie case," *id.* at 64—an error the court explained it made because it "overlooked [Jones]'s inability to establish that his supervisors had knowledge of the protected activity," *id.* at 56. Accordingly, the court granted the Board's Rule 59(e) motion to alter or amend the judgment and "dismiss[ed]" this claim as well. *Id.* at 64.

Jones now appeals, challenging both the denial of discovery and the grant of summary judgment on his discrimination and retaliation claims. We review the denial of a Rule 56(f) motion for abuse of discretion. *Dunning v. Quander*, 508 F.3d 8, 9 (D.C. Cir. 2007). We review the district court's grant of summary judgment de novo and may affirm only if, viewing the evidence in the light most favorable to Jones and giving him the benefit of all permissible inferences, we conclude that no reasonable jury could reach a verdict in his favor. *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004). And "because we review the district court's judgment, not its reasoning, we may affirm on any ground properly raised." *EEOC v. Aramark Corp.*, 208 F.3d 266, 268 (D.C. Cir. 2000).

## II.

We begin with Jones's argument that the district court erred by granting the Board summary judgment on his discrimination claims and denying him Rule 56(f) discovery in the process. According to the Board, we needn't address either issue, as Jones's discrimination claims were not properly before the district court in the first place. We agree.

Nearly a year after Jones sued the Board for retaliation, he moved to amend his complaint to add the underlying discrimination claims. The Board opposed the amendment, arguing that the discrimination claims were untimely because Jones had failed to bring them within the required ninety-day period. *See* § 2000e-16(c); *Price*, 470 F.3d at 389. The district court disagreed, holding that "[b]ecause the amended complaint builds on previously alleged facts and because the defendant had notice of the discrimination claims, the amended complaint relates back to the original complaint." *Jones*, 445 F. Supp. 2d at 57 (applying Federal Rule of Civil Procedure 15(c)).

Although Federal Rule of Civil Procedure 15(a) permits amendments to the pleadings "when justice so requires," an amendment adding a new ground for relief to the complaint must contend with the applicable statute of limitations. *See United States v. Hicks*, 283 F.3d 380, 386–87 (D.C. Cir. 2002) (explaining that statute of limitations problems might "beset" Rule 15(a) amendments). In limited circumstances, Rule 15(c) saves an otherwise untimely amendment by deeming it to "relate back" to the timely-filed claims the plaintiff alleged in the original complaint. Specifically, Rule 15(c)(1)(B) provides that an amendment "relates back" to the date of the original pleading if the "amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out— or attempted to be set out—in the original pleading." Interpreting this language, the Supreme Court recently explained that relation back is improper when the amended claim "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). We have likewise explained that an amendment that "attempts to introduce a new legal theory based on facts different from those underlying the timely claims" does not relate back. *Hicks*, 283 F.3d at 388. Indeed, even an amendment that shares "some elements and some facts in common" with the original claim does not relate back if its effect is "to fault [the defendants] for conduct different from that identified in the original complaint." *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008). Thus, "[t]he underlying question is whether the original complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint." *Id.*

In this case, because the facts supporting the amended claims for discrimination "differ in both time and type" from those set forth in Jones's original complaint, *Mayle*, 545 U.S.

at 650, the amended claims plainly fault the Board "for conduct different from that identified in the original complaint," *Meijer*, 533 F.3d at 866. Although an employee may allege both discrimination and retaliation based on the same incident, Jones has not done so. Instead he has alleged that the Board initially discriminated against him when it denied him a promotion, and then—some 32 months later, at least—retaliated against him when it downgraded his evaluations in reaction to his discrimination complaints. Indeed, the original complaint nowhere even mentions the Board's 1998 selection of Richards for the managerial position—the factual basis for Jones's discrimination claims—but instead recounts only Jones's subsequent complaints of discrimination. Specifically, paragraph 9 of the original complaint says only that:

> In November 1999, Mr. Jones filed a complaint with the Federal Reserve's EEO Office. The complaint, and subsequent amendments to it, raised claims of age discrimination, gender discrimination, and retaliation. The complaint specifically named Mr. Michael Martinson, Mr. Jones' immediate supervisor at the time, as one of the primary wrongdoers.

Compl. ¶ 9. Although this paragraph alludes to Jones's discrimination claims, it sets forth no facts that would support them. Indeed, the facts the complaint does recite—Jones's filing of a 1999 administrative complaint, his receipt of "inaccurate[]" performance evaluations in following years, and the effect those ratings had on his salary and career, *see id.* ¶¶ 10–11—differ markedly "in both time and type" from those that would. *See Mayle*, 545 U.S. at 650.

The district court thought it relevant that Jones's notice of intent to sue, which Jones filed after receiving the notice of final agency action and before filing his civil complaint, informed the Board that he planned to bring his discrimination claims in the civil suit. Under our precedent, however, it is the original complaint, not some other earlier filing or document, that must give the defendant notice of the amended claim. *See Meijer*, 533 F.3d at 866. Indeed, if anything, Jones's inclusion of his discrimination claims in the notice of intent to sue makes their absence from the original complaint all the more conspicuous. Rather than informing the Board "of the basis for liability [that Jones] would later advance in the amended complaint," *id.*, the original complaint effectively notified the Board that Jones was abandoning any attempt to hold it liable for failing to promote him.

In sum, given that Jones's discrimination claims fault the Board for conduct identified nowhere in the original complaint, they cannot relate back under Rule 15(c). And because Jones failed to bring his discrimination claims within ninety days of receiving notice of final agency action and because he nowhere argues that the claims are otherwise timely, we agree with the Board that the district court should have dismissed them.

Jones believes that two procedural problems bar us from affirming on this ground. He is mistaken.

First, Jones claims that the Board's failure to appeal the district court's order granting the motion to amend precludes this "stealth appeal" of the district court's determination that the claims were timely under Rule 15(c). Appellant's Reply Br. 3. But a party that prevails entirely in the district court—like the Board here—needn't cross-appeal an adverse

interlocutory order to urge the rejected argument as an alternative ground for affirming the final judgment. *See Singh v. George Washington Univ. Sch. of Med. & Health Scis.*, 508 F.3d 1097, 1099–1100 (D.C. Cir. 2007) (cross-appeal unnecessary when the appellee seeks "no change in the final judgment in its favor" but instead only seeks "affirmance of the judgment, either on the grounds of the district court's latest opinion or on the basis of arguments that the district court rejected in various interlocutory rulings"). In fact, we encourage such parties not to cross-appeal. *See Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 741 (D.C. Cir. 1995) ("Cross-appeals for the sole purpose of making an argument in support of the judgment are worse than unnecessary." (quoting *Jordan v. Duff & Phelps, Inc.*, 815 F.2d 429, 439 (7th Cir. 1987))).

Second, Jones argues that the Board's statute of limitations defense cannot sustain the judgment because the Board failed to present it to the district court as a ground for summary judgment. In support, Jones relies on *Marymount Hospital, Inc. v. Shalala*, 19 F.3d 658 (D.C. Cir. 1994), but that case only stands for the unremarkable proposition that an argument never made below is waived on appeal—not the very different proposition that an argument made, rejected, and unrenewed in a later summary judgment motion provides no grounds for affirmance. In reality, we may affirm a judgment on any ground the record supports, *Wilburn v. Robinson,* 480 F.3d 1140, 1148–49 (D.C. Cir. 2007), and that the opposing party had a "fair opportunity" to address, *Briggs v. Wash. Metro. Area Transit Auth.*, 481 F.3d 839, 843 (D.C. Cir. 2007) (internal quotation marks omitted). Here not only did the Board raise its statute of limitations defense in its opposition to Jones's motion to amend the complaint, as Jones concedes, *see* Appellant's Reply Br. 2, but he responded in his reply brief, *see* Pl.'s Reply to Def.'s Opp. to Mot. to

Amend 2–5.  Moreover, contrary to Jones's argument, the Board did not abandon its defense by failing to raise it in its summary judgment motion.  On the very day the Board filed that motion, it asserted the defense in its answer to Jones's amended complaint, *see* Answer to Am. Compl. 4, and a defendant does not abandon an affirmative defense set forth in the answer simply by omitting it from a motion for summary judgment, *Daingerfield Island Protective Soc'y v. Babbitt*, 40 F.3d 442, 445 (D.C. Cir. 1994).  Nor do we agree with Jones that he suffered prejudice because the Board chose to forgo rehashing this argument at the summary judgment stage.  To the contrary, we can hardly imagine a less prejudicial situation for Jones given that he not only argued the statute of limitations issue in the district court but prevailed.

## III.

This brings us to the district court's grant of summary judgment to the Board on Jones's retaliation claims.

Jones first argues that the district court abused its discretion in failing to rule on his related Rule 56(f) motion before granting summary judgment to the Board on his retaliation claims.  This argument needn't detain us given that Jones has offered no legal analysis in support of it.  Although Jones did provide sufficient analysis with respect to his separate Rule 56(f) motion related to the discrimination claims, that motion is distinct from this one, as are the issues underlying it.  Thus, because Jones neither cites nor discusses any relevant case law to support his argument regarding his Rule 56(f) request for discovery on his retaliation claims, we consider the argument waived.  *See Ry. Labor Executives' Ass'n v. U.S.R.R. Ret. Bd.*, 749 F.2d 856, 859 n.6 (D.C. Cir. 1984) (declining to decide issue "on the basis of briefing which consisted of only three sentences . . . and no discussion of the . . . relevant case law").

Before moving on to the merits of Jones's retaliation claims, we pause for a refresher on the basics. Both Title VII and the ADEA prohibit the federal government from retaliating against employees who complain of employment discrimination. *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008) (Title VII); *Gomez-Perez v. Potter*, 128 S. Ct. 1931, 1943 (2008) (ADEA). Whether brought under Title VII or the ADEA, retaliation claims based on circumstantial evidence—like Jones's—trigger the familiar burden-shifting framework of *McDonnell Douglas*. *Carter*, 387 F.3d at 878. Under that framework, a plaintiff must first establish a prima facie case of retaliation by showing (1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two. *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007). If the plaintiff establishes a prima facie case, the burden shifts to the employer to produce a "'legitimate, nondiscriminatory reason'" for its actions. *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If the employer does so, "the burden-shifting framework disappears, and a court reviewing summary judgment looks to whether a reasonable jury could infer . . . retaliation from all the evidence," which includes not only the prima facie case but also the evidence the plaintiff offers to "attack the employer's proffered explanation for its action" and other evidence of retaliation. *Carter*, 387 F.3d at 878 (internal quotation marks omitted).

With these fundamental principles in mind, we follow the district court's lead, considering first the retaliation claims arising from the 2000 evaluation and then the claims arising from the 2001–2003 evaluations.

*2000 Evaluation*

Recall that although the district court originally denied summary judgment on the retaliation claims arising from the 2000 evaluation, it subsequently granted the Board's Rule 59(e) motion to alter or amend the judgment because Jones had failed to "prove[] [his] prima facie case." *Jones*, 538 F. Supp. 2d at 64. Previously the district court reached just the opposite conclusion. Relying on the established principle that temporal proximity between protected EEO activity and adverse action can support an inference of causation when the two events are "'very close'" in time, *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007) (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)), the district court originally concluded that Jones satisfied his prima facie burden because approximately one month separated his September 2000 request for a hearing from the adverse 2000 evaluation. But reconsidering that decision, the court ruled that Jones had not satisfied his prima facie burden because he "failed to establish that his supervisors had knowledge of" his September 2000 request for a hearing. *Jones*, 538 F. Supp. 2d at 64. Although a denial of summary judgment is interlocutory in nature and therefore not a proper basis for a Rule 59(e) motion, *see* Fed. R. Civ. P. 54(a) ("'Judgment' as used in these rules includes a decree and any order from which an appeal lies."), we view the district court's ultimate "dismiss[al]" of the retaliation claims arising from the 2000 evaluation, *Jones*, 538 F. Supp. 2d at 64, as equivalent to a permissible reconsideration of its original denial of summary judgment, *see Langevine v. District of Columbia*, 106 F.3d 1018, 1023 (D.C. Cir. 1997) ("Interlocutory orders are not subject to the law of the case doctrine and may always be reconsidered prior to final judgment.").

On appeal Jones argues that he satisfied his prima facie burden by demonstrating that the Board had knowledge of his

September 2000 request for a hearing and that whether his supervisors themselves had such knowledge was a question of fact for the jury. At this stage of the litigation, however, asking whether Jones satisfied his prima facie burden is an unnecessary and improper "sideshow." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). The Supreme Court long ago held in *United States Postal Service Board of Governors v. Aikens* that once the employer asserts a legitimate, nondiscriminatory reason for its actions, it "has done everything that would be required . . . if the plaintiff had properly made out a *prima facie* case," so "whether the plaintiff really did so is no longer relevant." 460 U.S. 711, 715 (1983). At this point, the Court explained, the only question is the "ultimate factual issue in the case"— "discrimination *vel non*." *Id.* at 714–15. We have repeatedly reiterated this principle. *See, e.g.*, *George v. Leavitt*, 407 F.3d 405, 411–13 (D.C. Cir. 2005) (doing so when the defendant articulated its legitimate reasons for the contested action "as part of the parties' cross-motions for summary judgment"). Indeed, in *Brady v. Office of Sergeant at Arms* we emphasized that "the question whether the employee made out a prima facie case" under the *McDonnell Douglas* framework "is almost always irrelevant" because "by the time the district court considers an employer's motion for summary judgment . . . the employer ordinarily will have asserted a legitimate, non-discriminatory reason for the challenged decision—for example, through a declaration, deposition, or other testimony from the employer's decisionmaker." 520 F.3d at 493; *see also id.* ("[J]udicial inquiry into the prima facie case is usually misplaced."). Not only is the prima facie case irrelevant at this point, but "the district court need not—*and should not*— decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Id.* at 494. Because the employer in *Brady* had asserted its legitimate, nondiscriminatory reason for the challenged demotion, we

rejected awarding summary judgment on the ground that the plaintiff's prima facie case was wanting, instead affirming because all the evidence, taken together, was insufficient to support a reasonable inference of discrimination. *Id.* at 494–95.

Because these principles apply equally to retaliation claims, they control the outcome of this case. *See Wiley*, 511 F.3d at 155–56. Given that the Board asserted its legitimate non-retaliatory explanation for the 2000 evaluation—that it reflected an honest assessment of Jones's performance—the district court should have proceeded to the ultimate issue of retaliation *vel non* instead of evaluating whether Jones made out a prima face case. At that stage, the only question is whether the employee's evidence creates a material dispute on the ultimate issue of retaliation "'either directly by [showing] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Aikens*, 460 U.S. at 716 (quoting *Burdine*, 450 U.S. at 256); *see also Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998) (en banc) ("In an appropriate case, '[t]he factfinder's disbelief of the reasons put forward by the defendant' will allow it to infer intentional discrimination." (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (alteration in original))). Thus, the court reviews each of the three relevant categories of evidence—prima facie, pretext, and any other—to determine whether they "either separately or in combination" provide sufficient evidence for a reasonable jury to infer retaliation. *Waterhouse v. District of Columbia*, 298 F.3d 989, 996 (D.C. Cir. 2002). Moreover, though evidence of pretext is not *per se* sufficient to permit an inference of discrimination, *see Aka*, 156 F.3d at 1291, it "[u]sually . . . will be enough to get a plaintiff's claim to a

jury," *George*, 407 F.3d at 413 (internal quotation marks omitted).

Reviewing the evidence ourselves, we conclude that the district court got it right the first time when it denied the Board's motion for summary judgment. We start with Jones's prima facie evidence of the temporal proximity between his September 2000 request for a hearing and the October 2000 evaluation. According to the Board, this timing of events cannot support an inference of retaliatory motive for two reasons.

The Board first claims that the temporal proximity evidence is worthless absent additional evidence that Jones's supervisors knew of his September 2000 request—knowledge the Board insists they lacked. We agree that Jones's supervisors could not have retaliated against him unless they had knowledge of his protected activity. To survive summary judgment, however, Jones needn't provide direct evidence that his supervisors knew of his protected activity; he need only offer circumstantial evidence that could reasonably support an inference that they did. And we have repeatedly recognized that the precise kind of evidence Jones has offered—that "the *employer* had knowledge of the employee's protected activity, and the adverse personnel action took place shortly after that activity"—is "adequate to permit an inference of retaliatory motive," at least at the prima facie stage. *Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006) (internal quotation marks and alteration omitted, emphasis added); *see also id.* (recognizing temporal proximity when employee "traded correspondence" with unidentified "senior [agency] personnel" around the time that her supervisors allegedly retaliated against her); *Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006) (recognizing temporal proximity when agency had knowledge of

employee's protected activity); *Singletary v. District of Columbia*, 351 F.3d 519, 525 n.6 (D.C. Cir. 2003) (similar). Of course, that such evidence would show intent at the prima facie stage does not resolve the question of retaliation *vel non*. Yet the reason we deem such evidence sufficient to support a prima facie case—that it tends to support a circumstantial inference of retaliation—applies to the ultimate inquiry as well. Moreover, if such evidence can support an inference of actual retaliatory motive, it necessarily can support an inference of mere knowledge.

Contrary to the Board's second argument, *Clark County School District v. Breeden* does not weaken any inference of retaliation that a reasonable jury could draw from the temporal connection between Jones's protected activity and his subsequent adverse evaluation. In *Breeden* nearly twenty months had elapsed between the plaintiff's protected activity (the filing of an EEOC complaint) and the adverse action (a proposed transfer). 532 U.S. at 273–74. Three months before the supervisor recommended the transfer, however, the employer received a right-to-sue letter from the EEOC. *Id.* at 272. The employee argued that this chronology supported an inference that the proposed transfer was in response to her EEOC complaint because the right-to-sue letter provided the employer with its earliest notice of it. *Id.* at 273. The Supreme Court thought otherwise. Relying on the fact that Title VII and its implementing regulations require notice to the employer upon the filing of charges, the Court reasoned that "if one presumes [the supervisor] knew about [the right-to-sue letter], one must also presume that she (or her predecessor) knew almost two years earlier about the protected action (filing of the EEOC complaint) that the letter supposedly disclosed." *Id.* at 273. As such, the Court deemed the interval between the protected activity and the adverse action to be the twenty months actually separating the

two rather than the three months between the right-to-sue letter and the adverse action. "[A]ction taken . . . [twenty] months later," the Court concluded, "suggests, by itself, no causality at all." *Id.*

Relying on *Breeden*, the Board argues that if its knowledge of Jones's protected activity is sufficient to "presume" his supervisors' knowledge, then it's also sufficient to presume that his supervisors knew of his initial informal complaint, and because that occurred eleven months prior to the 2000 evaluation, far too much time passed to infer a retaliatory motive. Nothing in *Breeden* supports this proposition. Unlike the right-to-sue letter at issue in *Breeden*, Jones's September 2000 request for a hearing was itself protected activity, as the Board concedes, *see* Appellee's Br. 7. *Compare Breeden*, 532 U.S. at 273 (considering it "utterly implausible . . . that the EEOC's issuance of a right-to-sue letter—an action in which the employee takes no part—is a protected activity of the employee"), *with, e.g.*, *Singletary*, 351 F.3d at 524–25 (deeming the plaintiff's letter requesting a status update to be protected activity). Therefore, the letter's significance is not that it disclosed earlier protected activity but that it was itself protected activity. Were we to accept the Board's argument, temporal proximity could support an inference of retaliation only in the immediate aftermath of the employee's first protected act. Yet because Title VII and the ADEA protect employees who engage in any protected activity, we have repeatedly held that an adverse action following closely on the heels of protected activity may in appropriate cases support an inference of retaliation even when occurring years after the initial filing of charges. *See Holcomb*, 433 F.3d at 903 (considering protected activity occurring two years after the filing of the complaint); *Singletary*, 351 F.3d at 524–25 (concluding that the district court erred in evaluating temporal proximity only on the basis

of the "original protected activity" rather than protected activity years later (internal quotation marks omitted)).

To be sure, in some cases the nature of the protected activity and the full context (including the whole chain of events since the initial filing of a complaint) may render evidence of temporal proximity insufficient to permit an ultimate inference of retaliation. But we needn't decide whether this is such a case, for Jones has offered evidence discrediting the Board's legitimate explanation for the 2000 evaluation—evidence that alone provides an adequate basis from which a reasonable jury might infer retaliation. Specifically, in response to the Board's claim that Jones's 2000 "commendable" rating reflected an honest assessment of his performance and his failure to complete two projects in particular, Jones offered evidence that he was never assigned one of the projects and was removed from the other. As we have said, such evidence "usually" is itself sufficient to allow a reasonable jury to infer retaliation. *George*, 407 F.3d at 413. Although a jury may ultimately choose to believe the Board's explanation of events rather than Jones's, at this stage we refrain from making credibility determinations, weighing the evidence, or drawing inferences from the evidence— these, after all, are "jury functions, not those of a judge ruling on a motion for summary judgment." *Id.* It's enough for us to conclude, as the district court originally did, that this evidence would allow a reasonable jury to believe Jones's version of events.

### *2001–2003 Evaluations*

As in the case of the 2000 evaluation, even though the Board had offered its legitimate explanation for the 2001– 2003 evaluations, the district court assumed that a shortcoming in Jones's prima facie case entitled the Board to judgment as a matter of law. As we explained above,

however, under the Supreme Court's decision in *Aikens* and our cases interpreting it, the district court should have focused only on the ultimate question of retaliation *vel non*, not the antecedent—and by then irrelevant—prima facie case.

Of course we could decide this issue ourselves, *see supra* at 16, but the Board has urged us not to do so. Instead, acknowledging that the district court ruled in its favor only because of perceived defects in Jones's prima facie case and that the court neither addressed the question of retaliation *vel non* nor even considered entire categories of evidence relevant to its resolution, the Board asks that if we "decide that the district court erred in its determination of the causation issue," we "remand the matter to the district court for consideration of the issue of retaliation *vel non*." Appellee's Br. 17. We think this makes sense. Given "the state of the record and the factual intricacies intertwined with [Jones's] allegations," we are "unwilling to delve into . . . questions that the district court did not address." *Steele v. Schafer*, 535 F.3d 689, 696 (D.C. Cir. 2008). Consistent with the Board's request, then, we shall reverse the grant of summary judgment on Jones's retaliation claims arising from the 2001–2003 evaluations and remand to allow the district court to address the retaliation *vel non* question in the first instance. *See id.* at 696-97 (reversing and remanding after concluding that district court made an error of law in granting summary judgment).

## IV.

For the foregoing reasons, we affirm in part and reverse in part, remanding the retaliation claims arising from the 2000 evaluation for trial and those arising from the 2001–2003 evaluations for further proceedings consistent with this opinion. In doing so, we emphasize that nothing we say here forecloses the district court from granting the Board summary judgment as to the 2001–2003 evaluations if it concludes that

the evidence, viewed in the light most favorable to Jones, is insufficient to support a reasonable inference of retaliatory intent. Any such conclusion, however, must rest on all available evidence, not on any perceived technical deficiencies in Jones's prima facie case.

*So ordered.*