Twylah JAGIELO, Plaintiff,

v.

Otto WOLFE, Acting Secretary
of Commerce, Defendant.

Civil Action No. 1:08–cv–00402 (JRG).

United States District Court,
District of Columbia.

Aug. 13, 2009.

**2**

James R. Klimaski, Lynn Ilene Miller, Klimaski & Associates, P.C., Washington, DC, for Plaintiff.

Harry Roback, Assistant U.S. Attorney, U.S. Attorney's Office for the District of Columbia, Washington, DC, for Defendant.

## MEMORANDUM OPINION & ORDER

JOSEPH R. GOODWIN, Chief Judge.

Plaintiff Twylah Jagielo has alleged that the Secretary of the United States Department of Commerce ("the Department") unlawfully retaliated against her for previous Equal Employment Opportunity ("EEO") complaints in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* She claims that a Department employee did not place her on the list of candidates for two positions at the Department for which she was qualified and also failed to award her a 10–point Veterans' Preference—failures which led to her not being hired for either position. This matter comes before the court on the defendant's Motion for Summary Judgment [Docket 15]. For the reasons stated below, the Motion is **GRANTED.**

## I. Background

The facts giving rise to this Title VII action are as follows. Ms. Jagielo, who is

of Hispanic descent, served in the United States Army as a personnel manager from 1978 to 1988, when she was honorably discharged. (Compl. ¶¶ 7–8 [Docket 1]; Mot. Summ. J., Attach. 4, Jagielo Dep. ("Jagielo Dep.") at 18–19, 25 [Docket 15].) In 1989, Ms. Jagielo began working in the Department's Bureau of Economic Analysis as a GS–7 Training Program Assistant. (Compl. ¶ 9; Jagielo Dep. at 32.) As part of her initial application with the Department, Ms. Jagielo submitted a copy of her discharge papers that indicated she was a disabled veteran. (Compl. ¶ 10.) While working in that position, Ms. Jagielo filed an EEO complaint in 1993 involving a racial discrimination claim. (Jagielo Dep. at 166.) That complaint became a civil suit, which ultimately settled. (*Id.*)

Ms. Jagielo filed a second EEO complaint in 1994, alleging racial discrimination and claiming that the Department had denied her a promotion because of her race. (*Id.* at 166–67.) That claim was resolved or otherwise settled. (*Id.* at 167.) In May of 1994, Ms. Jagielo received a promotion to a GS–9 Training Program Coordinator. (Compl. ¶ 11.)

She filed a third EEO complaint against the Department in 2000, again alleging racial discrimination in the Department's failure to provide her with advancement opportunities. (Jagielo Dep. at 167–68.)

That complaint was ongoing at the time that she submitted her applications for the job positions at issue in this matter.[1] (*Id.* at 168.)

Ms. Jagielo was reassigned to a GS–9 Administrative Support Specialist in the Department's Office of Procurement and Support Services from February 2002 to July 2003. (Compl. ¶ 12.) In July 2003, Ms. Jagielo left the Department for a two-year fellowship with the United States Department of Labor, where she received a promotion to GS–11.[2] (*Id.* ¶ 13.)

On November 19, 2002, the Department's Office of Inspector General announced an available GS–9 Management and Program Analyst position ("the announcement"). (*Id.* ¶¶ 14, 17; Mot. Summ. J., Attach. 5, Ex. 4 at 38.) The position had GS–12 promotion potential and federal employees could apply through both merit and competitive channels.[3] (Compl. ¶¶ 14, 17; Mot. Summ. J., Attach. 5, Ex. 4 at 38.) The job duties included working as part of a team to assess the effectiveness and efficiency of the Department's programs and operations, identifying internal control weaknesses or ineffective practices, as well as best practices, uncovering possible wrongdoing, and identifying management problems and making recommendations to

---

1. Ms. Jagielo testified that she may have filed several other EEO complaints between 2000 and 2003, but that she did not remember them specifically. (Jagielo Dep. at 169.) The record reflects that Ms. Jagielo did file another EEO complaint in 1999. (Mot. Summ. J., Attach. 6, Ex. 1.) The Equal Employment Opportunity Commission ("EEOC") found no Title VII violation arising from that complaint. (*Id.*)

2. Ms. Jagielo accepted the Department of Labor position before she learned that she had not been selected for the positions at issue. She worked at the Department of Labor until 2005, at which time she filed a discrimination

complaint against the Department of Labor, which she later withdrew. (Jagielo Dep. at 45–49, 55–57.)

3. To be considered under both systems, an applicant was instructed to submit two complete applications, which Ms. Jagielo did. (Mot. Summ. J., Attach. 5, Ex. 4 at 42.) The announcement explained that under merit staffing, veterans do not receive a preference in the rating/selection process that is required by competitive examining procedures. (*Id.*) Moreover, also under merit staffing, status applicants must meet the time-in-grade restrictions that do not apply to the competitive examining process. (*Id.*)

address those issues. (Mot. Summ. J., Attach. 5, Ex. 4 at 40.)

The announcement indicated that a complete application for the open position should include the following: documentation of either one year of experience as a GS–7 and involving the specific knowledge, skills, and abilities of the position, or an official transcript showing the completion of a master's degree; four Knowledge, Skills and Abilities written statements ("KSAs") which had to provide specific examples of how the applicant's experience and/or education fulfilled each KSA; a resume or other proof of job-related qualifications; and any proof of hiring preference, such as qualification for a Veterans' Preference. (Compl. ¶ 15; Mot. Summ. J., Attach. 5, Ex. 4 at 40.) The four KSAs were: (1) Ability to Evaluate Program Performance; (2) Ability to Communicate in Writing; (3) Ability to Communicate Orally; and (4) Ability to Promote Effective Teamwork. (Mot. Summ. J., Attach. 5, Ex. 4 at 40–41.) The fourth KSA specifically stated that it included the "[a]bility to work closely and productively with team members of diverse backgrounds and skills to gain mutual respect and successfully accomplish assignments." (*Id.* at 42.) It also asked that applicants "address your leadership experiences including your level of responsibility and provide examples of circumstances." (*Id.*)

Current federal employees were required to submit their most recent performance appraisal, a copy of their latest Standard Form 50 ("SF–50"), "Notification of Personnel Action" and/or a copy of the SF–50 that reflects career or career-conditional tenure. (*Id.* at 43.) To demonstrate qualification for a 10–point Veterans' Preference, which awards additional points to the score given to a veteran's application for employment, applicants were instructed to attach an Standard Form 15 ("SF–

15") "Application for 10–point Veterans' Preference" form in addition to any further proof required by that form. (Compl. ¶ 16.)

The announcement also stated that one position was available at that time, but that the announcement might be used to fill similar vacancies. Finally, the application warned that "[a]pplications that are incomplete ... will not be considered for this position." (Mot. Summ. J., Attach. 5, Ex. 4 at 44.)

Ms. Jagielo applied for the position by submitting two applications to the merit and competitive channels. (Compl. ¶¶ 18–19.) She hand-delivered her applications to Mary Good, a Human Resource Specialist with the Office of Inspector General's Human Resources Department, on December 3, 2002, which was the day the vacancy closed. (*Id.* ¶¶ 18–19; Mot. Summ. J., Attach. 5, Ex. 4 at 38; Mot. Summ. J., Attach. 6, Ex. 2, Decl. Raymond Valdez ¶¶ 2–4.) Ms. Jagielo's application included a current resume which documented her GS–7 experience and stated that she possessed a master's degree. (Mot. Summ. J., Attach. 5, Ex 5.) She attached the answers to the four KSAs to her resume. (*Id.*) Ms. Jagielo answered KSAs one through three in a narrative-style written statement. She did not submit a narrative answer addressing her leadership experiences, but instead submitted a document entitled "# 31, continued—ADDITIONAL TRAINING" which listed two pages of training courses she had completed since 1995. (*Id.* at 60–61.) Ms. Jagielo also attached a narrative statement explaining her knowledge of international economic and affairs, and trade policy. (*Id.* at 60.) Ms. Jagielo also submitted a recent performance evaluation. (*Id.* at 63–74.)

Finally, as part of her information on veteran status, Ms. Jagielo submitted SF–15. She also submitted Standard Form 50–

B from the Department, entitled "Notification of Personnel Action," ("SF 50–B") that indicated that Ms. Jagielo had received a $996.99 cash award on March 29, 1998. (Compl. ¶ 20; Mot. Summ. J. Attach. 5, Ex. 4 at 76–78.)

On SF 15, Ms. Jagielo checked the box indicating that she was claiming the preference because she was eligible for or in receipt of compensation from the Veteran's Administration or disability retirement. (Mot. Summ. J., Attach. 5, Ex. 4 at 76.) SF 15 indicates that A and C types of documentation are required as proof of such disability retirement. (*Id.*) First, Documentation type A, as listed on the back of SF–15, requires documentation of service and separation under honorable conditions. (*Id.*) To satisfy that requirement, an applicant may submit any of the following documents: honorable or general discharge certificate; certificate of transfer to Navy Fleet Reserve, Marine Corps Fleet Reserve, or enlisted Reserve Corps; orders of transfer to retired list; report of separation from a branch of the Armed Forces; certificate of service or release from active duty, provided that honorable separation is shown; an official statement from a branch of the Armed Forces showing that honorable separation took place; notation by the Department of Veterans Affairs or a branch of the Armed Forces on an official statement that the veteran was honorably discharged from military service; or an official statement from the Military Personnel Records Center that official service records show that honorable separation took place. (*Id.*) Second, Documentation type C requires that an applicant provide documentation of service-connected disability (compensable, i.e., 10% or more) by providing one of the following documents: (1) an official statement, dated within the last twelve months, from the Department of Veterans Affairs or a branch of the Armed Forces certify-

ing the veteran's present receipt of compensation for service-connected disability or disability retired pay; (2) an official statement, dated within the last twelve months, from the Department of Veterans Affairs or a branch of the Armed Forces certifying that the veteran has a service-connected disability of 10% or more; or (3) an official statement or retirement orders from a branch of the Armed Forces showing that the veteran was retired because of a 10% or more permanent service-connected disability or was transferred to the permanent disability retirement list due to such disability. (*Id.*)

Ms. Jagielo did not submit any of the documents required by SF 15. Ms. Jagielo believed that the SF 50–B was sufficient to establish her eligibility for a Veterans' Preference. Box 26 on the SF 50–B, entitled "Veterans Preference for RIF," is marked YES. (*Id.* at 78.) Ms. Jagielo testified that, because the Department would have had to verify that information with the Military Personnel Records Center, she believed that the SF 50–B qualified as an official statement from the military to meet SF 15's documentation requirement. (Jagielo Dep. 145–46.) Ms. Jagielo also testified that the Department had always known she was a disabled veteran because there was an official statement in the Department's files from the Military Personnel Records Center that official service records show that honorable separation took place. (*Id.* at 141–42, 150–51.) She stated, "I am a veteran. So the agency knew that I was a veteran. It's in my file. It has been certified up and down, but they continued to ask me for documents over and over again to verify that in fact I'm a veteran, a disabled veteran.... It's so frustrating.... It's very, very frustrating to go in and over and over again to ask for these documents." (*Id.* at 142.)

Ms. Jagielo hand-delivered her applications to Ms. Good, who was responsible for scoring the applications for the competitive application channel. Ms. Jagielo alleges that Ms. Good asked her about her pay grade and how long Ms. Jagielo had been at that grade (GS–9). (*Id.* at 160–61.) Ms. Jagielo testified that she responded that she had "been frozen at the GS–9 [level] and filing complaints and I had not been able to ... advance." (*Id.* at 161.) Ms. Jagielo informed Ms. Good that she had filed an EEO complaint concerning her current position. (Compl. ¶ 22.) Ms. Jagielo claims that Ms. Good thereafter "looked at [her] strangely and said that she would handle the situation."[4] (*Id.* ¶ 23; Jagielo Dep. 161–62.) Ms. Jagielo inquired as to whether any further information was necessary and Ms. Good responded that the application was complete. (Compl. ¶ 21; Jagielo Dep. 164–65.)

The scores on the submitted applications ranged from 70 to 97, and Ms. Jagielo received a score of 78. (Mot. Summ. J., Attach.6, Ex. 4.) Prior to ranking the job candidates under the competitive channel, Ms. Good noted that Ms. Jagielo submitted documentation for a Veterans' Preference, but did not include a "DD 214 and VA letter." (Compl. ¶ 25; Mot. Summ. J., Attach. 6, Ex. 5 at 39.) Accordingly, Ms. Good did not award Ms. Jagielo the 10–point Veterans Preference. (Compl. ¶ 25; Mot. Summ. J., Attach. 6, Ex. 5 at 39.) Ms. Good also did not award Ms. Jagielo any points for the fourth KSA, stating that Ms. Jagielo did not address this KSA in her application. (Compl. ¶ 29; Mot. Summ. J., Attach. 6, Ex. 5 at 40.)

On December 18, 2002, Ms. Good prepared a Delegated Examining Certificate,

DEU 03–03, that contained the applicants with the top seven scores. (Mot. Summ. J., Attach. 6, Ex. 6 at 42–43.) Those applicants had scores ranging from 87 to 97. (*Id.*) Ms. Jagielo was not on that list, but if she had received the 10–point Veterans' Preference, she would have been. Michael Spears, the selecting official for that position, selected an African–American male for the job. (Compl. ¶ 45; Mem. Supp. Mot. Summ. J. at 12.)

On January 21, 2003, Ms. Good prepared a second Delegated Examining Certificate, DEU 03–06, for the second vacancy that contained the top five applicants, with scores ranging from 87 to 97. (Mot. Summ. J., Attach. 6, Ex. 7 at 45.) Ms. Jagielo was again not on that list, and she would have been had she been given the Veterans' Preference. Mr. Spears selected a white female for the second vacancy. (Compl. ¶ 46.)

Raymond Valdez, who was the Director of the Department's Office of Inspector General Human Resources Management Division and Ms. Good's supervisor, has attested that he has reviewed all of Ms. Jagielo's application materials and that the decision not to grant her the Veterans' Preference was proper because she did not submit the required documentation. (Mot. Summ. J., Attach. 6, Ex. 2 ¶¶ 1, 4–6.) In addition, he affirmed that Ms. Good's decision not to grant Ms. Jagielo any points for the fourth KSA was also correct because Ms. Jagielo did not provide a response answer to that item.[5] (*Id.* ¶ 7.)

Ms. Jagielo contends that, had she received the 10–point Veterans' Preference, she would have been on both DEC lists as a "best qualified" candidate. (Compl. ¶ 38.) The defendant agrees. (Mem.

---

4. Ms. Jagielo testified that she was "quite concerned" over the strange look given to her by Ms. Good. (Jagielo Dep. 162.)

5. Ms. Good no longer works for the Department and could not be located for deposition in this matter.

Supp. Summ. J. at 12.) The defendant points out, however, that even if Ms. Jagielo had received all five points for the fourth KSA, she would not have made the list without the Veterans' Preference. (*Id.*)

On December 29,2003, Ms. Jagielo was notified that she was not selected for either position. (Compl. ¶ 47.) On February 4 and 5, Ms. Jagielo contacted the Department's Human Resources Office to discuss the selections, and Ms. Good confirmed that she was not selected for hire. (*Id.* ¶¶ 48–49.) Ms. Good informed Ms. Jagielo that neither candidate was Hispanic or a veteran and that both candidates who were selected for hire had less experience than Ms. Jagielo. (*Id.* ¶¶ 50–51.) After unsuccessfully bringing this claim before the Equal Opportunity Employment Commission ("EEOC"), Ms Jagielo filed this Title VII retaliation claim.[6]

## II. Discussion

### A. Summary Judgment Standard

A party is entitled to summary judgment if the pleadings on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering whether there is a triable issue of fact, a court must draw all reasonable

inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. The party opposing a motion for summary judgment, however, "may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). The non-moving party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Moreover, "any factual assertions in the movant's affidavits will be accepted as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion." *Neal v. Kelly*, 963 F.2d 453, 456 (D.C.Cir.1992) (quoting *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir.1982)).

### B. Title VII

■ It is illegal for an employer to discriminate against an employee because that employee has opposed any practice made illegal by Title VII or has otherwise participated in a Title VII proceeding. *See* 42 U.S.C. § 2000e–3; *Steele v. Schafer*, 535 F.3d 689, 695 (D.C.Cir.2008). To prevail on a Title VII claim, a plaintiff must first establish a prima facie case of impermissible retaliation under *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In the absence of direct evidence of retaliation, a plaintiff must "show that '(1) she engaged in statutorily protected activity; (2) her employer took an adverse personnel action against her; and (3) a causal connection exists between the two.'" *Vick-*

---

6. The plaintiff was required to exhaust her administrative remedies by filing an EEOC charge and allowing that charge to proceed through the administrative process. *See Ellis v. Georgetown Univ. Hosp.*, 631 F.Supp.2d 71, 75 (D.D.C.2009).

*ers v. Powell,* 493 F.3d 186, 195 (D.C.Cir. 2007) (quoting *Carney v. Am. Univ.,* 151 F.3d 1090, 1095 (D.C.Cir.1998)). An adverse action is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Douglas v. Donovan,* 559 F.3d 549, 552 (D.C.Cir.2009) (citation and internal quotation marks omitted). For a retaliation claim, the concept of adverse action is broader than in the discrimination context and "can encompass harms unrelated to employment or the workplace 'so long as a reasonable employee would have found the challenged action materially adverse.'" *Rattigan v. Holder,* 604 F.Supp.2d 33, 46 (D.D.C.2009) (quoting *Baloch v. Kempthorne,* 550 F.3d 1191, 1198 n. 4 (D.C.Cir.2008)). To be materially adverse, the action must be one that "'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (quoting *Rochon v. Gonzales,* 438 F.3d 1211, 1219 (D.C.Cir.2006)).

 If the plaintiff can make such a showing, the burden then shifts to the employer to produce evidence that the challenged action was taken for a legitimate, nondiscriminatory reason. *See Holcomb v. Powell,* 433 F.3d 889, 896 (D.C.Cir. 2006). Upon the presentation of such a reason, the question becomes whether the plaintiff has established that it is more likely than not that the employer's proffered reason is mere pretext for the true retaliatory motive. *See id.* at 896–97; *see also Jones v. Bernanke,* 557 F.3d 670, 678–79 (D.C.Cir.2009); *Weber v. Battista,* 494 F.3d 179, 186 (D.C.Cir.2007) ("In order to prove [that] the [employer's] explanations for [its] alleged acts of ... retaliation are

pretextual, [the plaintiff] must show 'both that the reason [the employer provided] was false, and that ... [retaliation] was the real reason [for the employer's decision].'" (citation omitted)). Such evidence may include: (1) evidence establishing the plaintiff's prima facie case; (2) evidence attacking the employer's proffered explanation for its actions; and (3) any further evidence of discrimination, such as independent evidence of discriminatory statements by the employer. *Holcomb,* 433 F.3d at 897.

## C. The Plaintiff's Claims

Ms. Jagielo has alleged that she engaged in protected activity when she filed previous EEO discrimination complaints and that Ms. Good did not award her the Veterans' Preference she deserved and did not place her on either Delegated Examining Certificate in retaliation against Ms. Jagielo for exercising her rights under Title VII. (Compl. ¶¶ 55–60.) Ms. Jagielo seeks $500,000 in compensatory damages, selection for one of the Department's positions, back pay, reinstatement and promotion, and attorney's fees and costs. (*Id.* at 7–8).

The defendant argues that summary judgment should be granted in his favor because no reasonable jury could conclude that Ms. Good retaliated against Ms. Jagielo based on her pending EEO discrimination complaint. (Mem. Supp. Summ. J. at 1.) The defendant contends that the undisputed evidence demonstrates that there were legitimate, non-discriminatory reasons for Ms. Good's actions. First, the defendant claims that Ms. Good did not award the Veterans' Preference to Ms. Jagielo because she had failed to submit the required documentation to prove that she was a disabled veteran. (*Id.*) Moreover, the defendant maintains that Ms. Good did not award Ms. Jagielo credit for

the fourth KSA because she had failed to address the topic as instructed. (*Id.* at 1–2.) The defendant contends that Ms. Jagielo has not offered any evidence to show that these nondiscriminatory reasons are a pretext for discrimination. (*Id.* at 2.)

Ms. Jagielo responds that Ms. Good's motivation for denying the Veterans' Preference to Ms. Jagielo is a genuine issue of material fact that cannot be decided on summary judgment. She also argues that a jury could reasonably believe that the defendant's asserted non-discriminatory reasons for its actions are pretextual because: (1) Ms. Good informed Ms. Jagielo that her application was complete; (2) Ms. Jagielo's file included sufficient documentation to show that she was entitled to the Veterans' Preference; and (3) the Department had recognized Ms. Jagielo's veteran status for fourteen years. (Mem. Opp. Summ. J. at 9–10 [Docket 19].) Finally, Ms. Jagielo argues that the Department's job requirements are arbitrary and capricious because the Department has failed to promulgate Veterans' Preference regulations and that the Department's one-size-fits-all approach to determining eligibility for Veterans' Preference is arbitrary and capricious as applied to applicants whose preference has previously been recognized by the Department. (*Id.* at 12–13.)

In reply, the defendant first contends that Ms. Jagielo has abandoned her retaliation claim based on Ms. Good's failure to award her points for the fourth KSA. (Rep. Opp. Summ. J. at 1 [Docket 21].) He argues that summary judgment should be awarded in the defendant's favor on this claim because the undisputed evidence demonstrates that Ms. Good did not award Ms. Jagielo points for the fourth KSA because she failed to address it in her application. (*Id.*) The defendant also

maintains that summary judgment is appropriate on the Veterans' Preference issue because Ms. Good had a legitimate, non-discriminatory reason to deny the Preference to Ms. Jagielo—her failure to submit the proper documentation. The defendant argues that Ms. Jagielo fails to explain why Ms. Good would want to retaliate against her and that no reasonable jury could infer retaliatory intent. (*Id.* at 2–6.) Finally, in response to Ms. Jagielo's argument that the defendant's actions were arbitrary and capricious, the defendant contends that Ms. Jagielo has only brought a Title VII claim and has not sought to amend her Complaint to add a new cause of action. (*Id.*) Moreover, the defendant maintains that Ms. Good's decision to follow the clear instructions of SF 15 was reasonable. (*Id.* at 7.)

### D. Analysis and Conclusion

■ At this stage of the proceedings, the court need only consider whether "the employee's evidence creates a material dispute on the ultimate issue of retaliation, 'either directly by [showing] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Jones v. Bernanke,* 557 F.3d 670, 678 (D.C.Cir.2009) (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)). This inquiry is now proper because the defendant has asserted legitimate, nondiscriminatory reasons for Ms. Good's actions: Ms. Good did not grant credit to Ms. Jagielo for the fourth KSA because it was non-responsive, and she did not grant Veterans' Preference to Ms. Jagielo because Ms. Jagielo failed to submit documentation in the format that was explicitly required.[7] Because the de-

7. Because Ms. Jagielo did not address the fourth KSA in her brief in opposition to the

fendant has proffered legitimate, nondiscriminatory explanations for the challenged actions, the issue of whether Ms. Jagielo has established a prima facie case is moot. *See, e.g., Aikens,* 460 U.S. at 715, 103 S.Ct. 1478 ("Where the defendant has done everything that would be required . . . if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant."); *see also Brady v. Office of Sergeant at Arms,* 520 F.3d 490, 492 (D.C.Cir.2008) (noting that "the question whether the plaintiff . . . actually made out a prima facie case is almost always irrelevant when the district court considers an employer's motion for summary judgment"). Thus, the court need only examine whether Ms. Jagielo has shown that a reasonable juror could believe it is more likely than not that Ms. Good's actions were actually caused by a retaliatory motive.

■ Ms. Jagielo proffers no reason why Ms. Good would want to retaliate against her. None of Ms. Jagielo's discrimination complaints concerned Ms. Good or the Office of the Inspector General, where Ms. Good had only recently started to work. (Mot. Summ. J., Attach. 6, Ex. 3 at 1.) It appears that Ms. Good had no reason to even know of Ms. Jagielo's complaints, other than the fact that Ms. Jagielo personally and *sua sponte* told Ms. Good of them.

In this respect, this case resembles *Vickers v. Powell,* 493 F.3d 186 (D.C.Cir. 2007). In *Vickers,* the D.C. Circuit Court of Appeals found that the plaintiff "failed to provide any evidence" as to why the person who ultimately made the decision to take adverse employment action against the plaintiff "might have wanted to see her removed." *Id.* at 195–96. As the D.C. Circuit noted, the decision-maker "was not involved in any of the events that preceded

[the plaintiff s] termination, nor did he participate in any of the alleged incidents" that gave rise to her claim. *Id.* at 196. Similarly, in *Short v. Chertoff,* 555 F.Supp.2d 166, 173 (D.D.C.2008), the plaintiff failed to show that "anyone who was knowledgeable of his complaint was connected to the decision" at issue. The fact that the charged person "knew of the plaintiff's complaint . . . does not address, much less rebut, the defendant's nondiscriminatory justification" because such knowledge "shows awareness, but not involvement or motive." *Id.* at 174.

Ms. Jagielo tries to distinguish *Powell* and *Chertoff* by arguing that "[t]he preferred explanation in both of those cases was far more credible than that in this case." (Mem. Opp. Summ. J. at 10). But the courts in both *Vickers* and *Chertoff* avoided deep analysis of the strength of the employers' proffered nondiscriminatory reasons, seemingly recognizing the undesirability of courts becoming " 'involved in the micromanagement of everyday employment decisions.' " *Vickers,* 493 F.3d at 196 (quoting *Forman v. Small,* 271 F.3d 285, 291 (D.C.Cir.2001)). Instead, the courts focused on the plaintiffs' inability to provide a reason why the individuals accused of retaliation would want to retaliate against the plaintiffs in the first place. *See also Forman,* 271 F.3d at 291 ("[T]he question before the court is limited to whether Dr. Foreman produced sufficient evidence of . . . discrimination, not whether he was treated fairly or otherwise entitled to promotion.").

Ms. Jagielo also fails to show that the Department's asserted reasons are pretextual. Her arguments on this point are unavailing. First, Ms. Good's indication to Ms. Jagielo that Ms. Jagielo's application

motion for summary judgment, it appears that she currently only challenges the denial

of Veterans' Preference. Accordingly, this Order focuses on that claim.

contained all necessary documents does not support a finding of discriminatory motive. Although Ms. Good was incorrect in this assertion, Ms. Jagielo provides no reason why Ms. Good's statement was anything more than a mistake. While it may be hoped that persons in Ms. Good's position are helpful to job applicants, behavior that is unhelpful or even misleading does not necessarily support a finding of retaliation. *See, e.g., Patterson v. Johnson,* 505 F.3d 1296, 1300–01 (D.C.Cir.2007) (noting that "[i]t is not enough for a plaintiff to show that [a] decision was not 'just or fair,' "; the plaintiff "must show that it was retaliatory" (internal citation omitted)).

Second, it remains undisputed that Ms. Jagielo did not submit the documentation explicitly required by the application. Although she submitted evidence that she had previously been found eligible for Veterans' Preference, her proffered document was several years old and not of the type required by the job application. Ms. Good's failure to investigate Ms. Jagielo's admittedly incomplete application does not support a finding that the defendant's legitimate explanations for Ms. Good's actions were pretextual.

Ms. Jagielo's argument that the Department's job requirements are arbitrary and capricious also fails. Ms. Jagielo did not include such a claim in her Complaint, and has never amended her Complaint accordingly. Although this fact alone provides sufficient reason to deny Ms. Jagielo's challenge to the Department's job requirements, it is worth noting that the Department has a legitimate interest in ensuring that only truly qualified persons receive Veterans' Preference. For example, a person previously found eligible for Veterans' Preference, such as Ms. Jagielo, might later be found ineligible; the Department's documentation requirements reduce the risk of fraud and mistakes.

Accordingly, the defendant's Motion for Summary Judgment [Docket 15] is **GRANTED.** The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.