# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 15, 2009  Decided November 10, 2009

No. 08-7040

GLENN KERSEY,
APPELLANT

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:96-cv-02639-RWR)

*Eric L. Siegel* argued the cause for appellant. With him on the briefs was *Neil L. Henrichsen*.

*Bruce P. Heppen*, Deputy General Counsel, Washington Metropolitan Area Transit Authority, argued the cause for appellee. With him on the brief were *Carol B. O'Keeffe*, General Counsel, *Mark F. Sullivan*, Deputy General Counsel, *Gerard J. Stief*, Senior Associate General Counsel, and *David J. Shaffer*, Associate General Counsel. *Sonia A. Bacchus* and *Robert J. Kniaz*, Counsel, entered appearances.

Before: HENDERSON and GARLAND, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Glenn Kersey, an employee of the Washington Metropolitan Area Transit Authority (WMATA), alleges that WMATA's refusal to promote him was the consequence of discrimination and retaliation, in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* WMATA contends that its refusal was the consequence of a binding settlement agreement that had been in place between the parties since 1990. The district court granted summary judgment for WMATA, and we affirm.

I

WMATA hired Kersey as a bus operator in 1979. In 1980, Kersey got into a fight with bus passengers, suffered injuries to his neck and back, and took a leave paid for by workers' compensation. Kersey was still on leave four years later when WMATA terminated him for failing to report two arrests. After Kersey's union (Local 922 of the International Brotherhood of Teamsters) filed a grievance on his behalf, WMATA reinstated him. In 1988, while still on leave, Kersey got into a fight with a WMATA employee on WMATA property and was again arrested. Charged with assault and carrying a deadly weapon, he was subsequently acquitted by a jury. On February 2, 1989, WMATA once again terminated Kersey, referencing his medical disqualification from operating a bus (based on his neck and back injuries), his record of violent physical confrontations, and his failure to report arrests. See WMATA Personnel Action Report (Feb. 2, 1989) (WMATA Supp. App. 115); WMATA Mem. (Jan. 31, 1989) (WMATA Supp. App. 116-17).

Kersey filed a grievance against this second termination. On April 23, 1990, Kersey, the union, and WMATA Assistant General Manager LeRoy Bailey signed an agreement that by its

terms constituted a "full and final settlement of this grievance." 1990 Settlement Agreement (WMATA Supp. App. 118). Under that agreement, Kersey was reinstated "to a position of cleaner-shifter with the understanding that he will only be permitted to clean buses and under no circumstance will he be permitted to operate an authority vehicle." *Id.* A subsequent memorandum of understanding, which Kersey also signed, reiterated that he "will not be permitted to operate an Authority vehicle (revenue and non-revenue) under any circumstances." 1990 Mem. of Understanding (May 25, 1990) (Supp. App. to Appellant's Br., Ex. B).

Soon after signing these agreements, and notwithstanding their provisions, Kersey began attempting to apply for positions that required operating WMATA vehicles. In the summer of 1990, WMATA refused to allow Kersey to take a promotional test for such a position, informing him that the 1990 Settlement Agreement precluded him from obtaining the position. *See* 2d Am. Compl. ¶ 41. From 1990 through the fall of 1995, Kersey repeatedly made requests -- which WMATA repeatedly denied -- for positions that required driving. *See id.* ¶¶ 41, 43, 47, 59. During this period, WMATA also repeatedly denied Kersey promotions into positions -- including the position of mechanic -- that required driving, citing the no-driving provision of the 1990 Agreement. *See* Appellant's Br. 6 (stating that WMATA asserted the "1990 'no-driving' restriction as the basis for reject[ing]" Kersey's promotion applications in 1993 and 1995); Pl.'s Answers to Def.'s 1st Interrogatories 19-21 (WMATA Supp. App. 195-97).

Beginning in 1991, Kersey filed a series of complaints with WMATA, his union, and the Equal Employment Opportunity Commission (EEOC), charging unfairness, disability discrimination, and retaliation by both WMATA and the union in regard to his failure to secure promotions. Beginning in 1992,

WMATA supervisors had intermittent discussions with the union about modifying the 1990 Settlement Agreement to permit Kersey to apply for positions that required driving, but that did not require driving passengers. 1992 Draft Agreement (WMATA Supp. App. 121); 1994 Draft Mem. of Understanding (WMATA Supp. App. 130). In October and November 1995, WMATA permitted Kersey to take tests for mechanic positions that required driving, but it ultimately denied him promotion to those positions -- again citing the no-driving provision. *See* 2d Am. Compl. ¶¶ 59-60; Pl.'s Answers to Def.'s 1st Interrogatories 19.

On November 22, 1996, Kersey sued WMATA in the U.S. District Court for the District of Columbia, contending (as refined on this appeal) that WMATA's 1993 and 1995 refusals to promote him to positions requiring driving constituted retaliation and disability discrimination under the Rehabilitation Act, 29 U.S.C. § 794(a). In 2008, the district court granted summary judgment in favor of WMATA, finding that the refusals were the "'delayed, but inevitable consequence' of the express terms of [the 1990] contract." *Kersey v. Wash. Metro. Area Transit Auth.*, 533 F. Supp. 2d 181, 191 (D.D.C. 2008) (quoting *Del. State Coll. v. Ricks*, 449 U.S. 250, 257-58 (1980)). The court concluded that Kersey had filed his suit too late under the applicable statute of limitations, and that, alternatively, he had failed to rebut WMATA's legitimate, nondiscriminatory explanation for its actions. *See id.* at 198. Because the court's alternative ground is sufficient to decide the case, it is our focus here.

## II

We review the district court's grant of summary judgment de novo. *See Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). Summary judgment is appropriate only if "there is no

genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute about a material fact is not "genuine" unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability" may be discriminated against by a federal agency "solely by reason of her or his disability." 29 U.S.C. § 794(a). The Act states that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under [provisions of] the Americans with Disabilities Act [ADA]." *Id.* § 794(d). The ADA, in turn, bars discrimination against a "qualified individual on the basis of disability in regard to . . . conditions[] and privileges of employment," including "advancement," *id.* § 12112(a), and bars retaliation against an individual for making a charge under or opposing any practice made unlawful by that Act, *see id.* § 12203(a); *Smith v. District of Columbia*, 430 F.3d 450, 454-55 (D.C. Cir. 2005).

Where, as here, a claim of discrimination or retaliation is based upon circumstantial evidence, we analyze the claim under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).[1] Under that framework, "the plaintiff must [first] establish a prima facie case

---

[1]*See Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1, 15 n.24 (D.C. Cir. 2006) (holding that disability discrimination claims under the Rehabilitation Act are "subject to the *McDonnell Douglas* framework"); *Woodruff v. Peters*, 482 F.3d 521, 528 (D.C. Cir. 2007) (applying "Title VII's *McDonnell Douglas* burden-shifting framework to retaliation claims under the Rehabilitation Act").

of discrimination" or retaliation. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence of "a legitimate, nondiscriminatory [or nonretaliatory] reason" for its actions. *Id.* If the defendant satisfies that burden, "the *McDonnell Douglas* framework -- with its presumptions and burdens -- disappear[s], and the sole remaining issue [is] discrimination [or retaliation] *vel non*." *Id.* at 142-43 (internal citations and quotation marks omitted). Thereafter, "to survive summary judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory [or retaliatory] reason." *Lathram*, 336 F.3d at 1088.[2]

---

[2]The district court was correct in holding that in a case like this, in which the defendant proffers a nondiscriminatory and nonretaliatory rationale, it is unnecessary to consider whether the plaintiff actually made out the elements of a prima facie case. See *Kersey*, 533 F. Supp. 2d at 197 n.14. As we explained in *Morgan v. Federal Home Loan Mortgage Co.*:

> [O]nce a defendant has proffered . . . a nondiscriminatory [and nonretaliatory] explanation, it has "done everything that would be required of [it] if the plaintiff had properly made out a prima facie case." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983). At that point, "whether the plaintiff really did so is no longer relevant," and the only question is "whether 'the defendant intentionally discriminated against the plaintiff.'" *Id.* at 715 (quoting [*Tex. Dep't of Cmty. Affairs v.*] *Burdine*, 450 U.S. [248,] 253 [(1981)]).

328 F.3d 647, 654 (D.C. Cir. 2003); *see Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).

In this case, WMATA has come forward with a legitimate, nondiscriminatory and nonretaliatory reason for refusing to promote Kersey to positions that required driving: to wit, the provision of the 1990 Settlement Agreement stating that "under no circumstance will [Kersey] be permitted to operate an authority vehicle." 1990 Settlement Agreement; *see* 1990 Mem. of Understanding (providing that Kersey "will not be permitted to operate an Authority vehicle (revenue and non-revenue) under any circumstances"). There is no dispute that the statute of limitations has long run on challenging the 1990 Settlement Agreement as itself having been motivated by disability discrimination or retaliation.[3] And given the emphatic nature of the bar against driving contained in that agreement, no reasonable jury could infer discriminatory or retaliatory intent from WMATA's reliance on it to deny Kersey a promotion. *Cf. Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (holding that "proceeding along lines previously contemplated" after an employee files an EEOC complaint "is no evidence whatever of [the] causality" required to prove retaliation). Indeed, Kersey concedes that, if the 1990 Settlement Agreement

---

[3]The parties disagree as to whether the relevant limitations period for claims under the Rehabilitation Act is three or four years. *Compare* Appellant's Br. 11 (three years for discrimination claims and four years for retaliation claims), *with* Appellee's Br. 38-40 (three years for both). We need not resolve this dispute, as Kersey did not file the instant suit until six years after signing the 1990 Settlement Agreement. Although Kersey's initial brief contested whether that agreement "was a final employment decision capable of triggering the statute of limitations," Appellant's Br. 9, the agreement's express terms make clear that it was, *see* 1990 Settlement Agreement (stating that the agreement constitutes a "full and final settlement of this grievance"). At oral argument, plaintiff's counsel conceded that the 1990 Settlement Agreement was final and instead rested his case on the claim (discussed below) that WMATA rescinded that agreement in 1995. *See* Oral Argument Recording at 7:02-:25.

remained in force, he has no viable claim.  *See* Oral Argument Recording at 7:00-:30.

But Kersey does not concede that the 1990 Settlement Agreement remained in force.  Rather, he contends that WMATA's reliance on the agreement is pretext because WMATA subsequently rescinded the agreement's no-driving restriction.  Oral Argument Recording at 8:01-10.  And as we have held, proof that an employer's proffered nondiscriminatory reason is mere pretext may well be enough to create a genuine issue of material fact, and hence to defeat a motion for summary judgment. *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1290 (D.C. Cir. 1998) (en banc); *see Reeves*, 530 U.S. at 147.

Citing a section of *Williston on Contracts* relating to waiver, Kersey contends that a party may unilaterally rescind (or waive) a written contractual provision either by "express declaration" or by "a clear, unequivocal and decisive act." Appellant's Br. 12 (quoting RICHARD A. LORD, 13 WILLISTON ON CONTRACTS § 39:28 (4th ed. 2000)); *see* Appellant's Reply Br. 3-4.  In fact, the Williston treatise's description of the rule is a bit more fulsome: "[I]n the absence of an express declaration manifesting the intent not to claim the right allegedly waived, there must be a clear, unequivocal, and decisive act of the party who is claimed to have waived its rights, so consistent with an intention to waive that no other reasonable explanation is possible."  WILLISTON ON CONTRACTS § 39:28; *see Lacek v. Wash. Hosp. Ctr. Corp.*, 978 A.2d 1194, 1200 (D.C. 2009) (stating that "a waiver must be clear and unambiguous").  The record in this case does not contain such an "express declaration" or "clear, unequivocal and decisive act."

Kersey first asks us to find evidence of rescission in a proposal that WMATA Assistant General Manager Bailey made to Kersey's union in August 1992.  Under that proposal, Kersey

would have been allowed "to advance to" a vacant steam cleaner position, which required the ability to operate a WMATA vehicle. 1992 Draft Agreement. Although Kersey contends that a reasonable jury could infer from this proposal that WMATA rescinded the no-driving provision, we do not see how. Bailey's proposal was by its own terms merely a "DRAFT" that would not "become[] effective [until] acceptance by Local 922." *Id.* There is no evidence "that the union ever accepted this proposal," and WMATA continued to enforce the 1990 no-driving provision thereafter. *Kersey*, 533 F. Supp. 2d at 187; *see id.* at 197 (noting that "the record establishes conclusively that WMATA repeatedly enforced the 1990 contract's driving prohibition from the time the contract was made through the last event about which Kersey complains in this suit"). Under these circumstances, no reasonable jury could conclude that WMATA made "an express declaration" waiving the provision, or that it "clear[ly], unequivocal[ly], and decisive[ly]" acted in a way "so consistent with an intention to waive that no other reasonable explanation is possible." WILLISTON ON CONTRACTS § 39:28.

The record also contains another draft agreement with the union, dated December 7, 1994. *See* 1994 Draft Mem. of Understanding. That 1994 Memorandum of Understanding (MOU) would have permitted Kersey to operate WMATA vehicles as required for maintenance positions. *Id.* Like the 1992 Draft Agreement, however, "the record does not establish that the union ever accepted this MOU." *Kersey*, 533 F. Supp. 2d at 188.

Kersey argues, second, that "WMATA unilaterally rescinded the 1990 Settlement Agreement by permitting [him] to test for positions that required driving." Appellant's Reply Br. 3. Specifically, Kersey contends that, in 1993 and 1995, WMATA permitted him to take examinations for mechanic positions that required some driving. *See id.* at 19. Union

representative Eddie Kornegay testified that, although WMATA's initial interpretation of the 1990 Settlement Agreement's no-driving provision had been that the agreement also barred Kersey from applying or testing for positions requiring driving, WMATA later "overturned" that interpretation and let Kersey "apply for and take exams for mechanical jobs." Kornegay Dep. 87 (WMATA Supp. App. 164). And in an internal 1996 communication, WMATA confirmed that, although Kersey "was initially denied the right to take the requisite exams due to the settlement agreement," later "there was a 'gentleman's agreement' made that reversed this." WMATA Mem. (July 22, 1996) (Supp. App. to Appellant's Br., Ex. B). Kersey argues that a reasonable jury could conclude that, by permitting him to take promotion tests, WMATA acted in a way that was consistent with an intention to rescind the no-driving provision.

But whether or not permitting testing was *consistent* with rescission, no reasonable jury could conclude that WMATA had "clear[ly], unequivocal[ly], and decisive[ly]" acted in a way "*so consistent* with an intention to waive *that no other reasonable explanation is possible*." WILLISTON ON CONTRACTS § 39:28 (emphasis added). As WMATA explained, once it began discussing with the union the *possibility* of altering the 1990 Settlement Agreement, WMATA had reason to allow Kersey to test. *See* Appellee's Br. 24. Testing, unlike driving, was not expressly barred by the 1990 Agreement. *See* 1990 Settlement Agreement. And if WMATA, Kersey, and the union had eventually been able to agree to alter that agreement, then Kersey's test results could have positioned him to secure subsequent promotions. As the district court held, "there is an obvious 'other reasonable explanation' for WMATA's inconsistent act, namely, that WMATA was willing to let Kersey take the promotional tests in anticipation of a

modification of the 1990 contract, a modification that never materialized." *Kersey*, 533 F. Supp. 2d at 196.

We therefore find no genuine issue as to whether the 1990 Settlement Agreement remained in force. As a consequence, there is no evidentiary support for Kersey's claim that WMATA's reliance on the agreement was mere pretext. And in the absence of any other basis upon which a reasonable jury could find that the denials of promotion were the result of discrimination or retaliation, there is no basis for overturning the district court's grant of summary judgment in favor of WMATA.

### III

For the foregoing reasons, the judgment of the district court is

*Affirmed*.