# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 6, 2010          Decided June 17, 2011

No. 10-7026

NICHOLAS GELETA,
APPELLANT

v.

VINCENT GRAY, MAYOR, DISTRICT OF COLUMBIA AND
DEPARTMENT OF MENTAL HEALTH,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:06-cv-01822)

*Ellen K. Renaud* argued the cause for appellant. With her on the briefs were *Richard L. Swick* and *David H. Shapiro*.

*Stacy L. Anderson*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellees. With her on the brief were *Peter J. Nickles*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General.

Before: GINSBURG, HENDERSON, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Appellant Nicholas Geleta alleges he was transferred to a position of less responsibility within the District of Columbia Department of Mental Health in retaliation for his statements corroborating a claim of racial discrimination against a Department official. The district court granted summary judgment for the District on the ground that Geleta failed to show that his transfer was a materially adverse employment action. For the reasons set forth below, we reverse and remand to the district court for further proceedings.

I

In 2001, appellant Nicholas Geleta helped the Department of Mental Health obtain a five-year grant from the U.S. Department of Health and Human Services (HHS) for a citywide mental health initiative for children with serious emotional disorders and their families. The project, known as D.C. Children Inspired Now Gain Strength (DC CINGS), sought to unite various children's mental health programs throughout the District into a single system of care. In April 2002, Geleta became DC CINGS's Project Director, a position that involved supervising approximately twenty employees and overseeing the planning, implementation, and evaluation of DC CINGS operations.

In June 2004, as part of its annual grant reauthorization process, HHS identified several terms and conditions DC CINGS needed to satisfy to ensure continued funding. These involved housekeeping matters such as submitting quarterly reports, creating communications and sustainability plans, and filling a particular position by a certain date. Four months later, in October 2004, representatives from HHS visited DC CINGS to assess the program's progress and compliance with

grant conditions. The site visitors issued a report on November 15, 2004, discussing the project's strengths and offering various recommendations for improvement. The report singled out Geleta's "dedicated leadership" as one of the project's strengths, Def. Ex. B, at 14, and recommended, among other things, targeting services to particular subgroups, expanding outreach efforts, and increasing community involvement in program decisionmaking, *id.* at 3-5. The report also announced that a follow-up visit would occur in six months to review progress on the recommendations, *id.* at 5, and reiterated that failure to comply with the terms and conditions of the reauthorization "may result in . . . suspension of funding," *id.* at 6.

On October 12, 2004, about a month before HHS issued its report, Geleta attended a meeting with several other senior Department of Mental Health officials, including Velva Spriggs, Geleta's direct supervisor; Ella Thomas, the Director of Policy and Planning and Spriggs's supervisor; and Mary Phillips, the Director of the Department's Juvenile Assessment Center. At the meeting, Spriggs, a black woman, and Phillips, a white woman, had a heated argument over whether Phillips reported to Spriggs. According to Spriggs, Phillips called her a "bitch" and said, "My mother told me not to deal with people of your kind."

Spriggs filed a complaint with the District's Equal Employment Opportunity Office (EEOO) alleging racial discrimination. Following an investigation, on January 12, 2005, the EEOO submitted a report to the Department along with written statements from Geleta and the others who were at the October 12 meeting. In his statement, Geleta corroborated Spriggs's claims and said that he believed Phillips's conduct toward Spriggs "could be interpreted as racially charged." Statement of Nicholas Geleta 2 (Dec. 21,

2004). The EEOO report concluded that a preponderance of the evidence supported a finding that Spriggs had been the victim of racial discrimination in violation of D.C. Code § 2-1402.11.

According to Geleta, sometime in late February 2005 Thomas told him he needed to find a new position. Decl. of Nicholas Geleta ¶ 4. Thomas declined to give a reason why, but Geleta alleges it was because he had supported Spriggs's discrimination charge. Thomas relieved Geleta of his duties as Project Director on March 3, 2005, and detailed him to the Department's Office of Accountability (OA). Geleta claims his new job at OA had significantly narrower and less important responsibilities than his previous position at DC CINGS. For example, according to Susan Curran, Geleta's first supervisor at OA, during the time she worked with Geleta he did not have a job description, but instead worked as her "right arm" in helping to "clear up a backlog" of treatment center applications. Decl. of Susan Curran ¶ 8. After approximately eight months at OA, Geleta became its Residential Treatment Center Certification and Monitoring Projects Manager. He entered the position at Grade 14, Step 6, the same grade and one step higher than he had been at DC CINGS. In October 2007, the District converted Geleta's position at OA to a Management Supervisory Service position. Although his job duties did not change, he received a substantial pay raise.

On October 23, 2006, Geleta filed a complaint in the district court alleging retaliation under Title VII of the Civil Rights Act of 1964. Title VII prohibits discrimination by an employer against an employee because of the employee's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Title VII's anti-retaliation provision further prohibits employer actions that discriminate against an

employee because the employee has "made a charge, testified, assisted, or participated in any manner" in a Title VII "investigation, proceeding, or hearing." *Id.* § 2000e-3(a). The district court granted the District's motion for summary judgment on February 19, 2010. We have jurisdiction over Geleta's appeal under 28 U.S.C. § 1291.

II

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review a grant of summary judgment *de novo*, drawing all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Salazar v. Wash. Metro. Area Transit Auth.*, 401 F.3d 504, 507 (D.C. Cir. 2005).

We analyze Title VII retaliation claims under the familiar three-step framework of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), as we restated it in *Brady v. Office of Sergeant at Arms*, 520 F.3d 490 (D.C. Cir. 2008), and *Jones v. Bernanke*, 557 F.3d 670 (D.C. Cir. 2009). To make out a prima facie case of retaliation, a plaintiff must show "(1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 577 (D.C. Cir. 2010) (quoting *Jones*, 557 F.3d at 677). "[W]here an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision," however, whether the plaintiff has made out a prima facie case is no longer relevant. *Brady*, 520 F.3d at 494. Rather, "a court reviewing summary judgment looks to whether a reasonable jury could infer retaliation from all the evidence, which

includes not only the prima facie case but also the evidence the plaintiff offers to attack the employer's proffered explanation for its action and other evidence of retaliation." *Gaujacq*, 601 F.3d at 577 (quoting *Jones*, 557 F.3d at 677) (internal quotation mark omitted).

Drawing all reasonable inferences from the evidence in Geleta's favor, we conclude a reasonable jury could find that he suffered an adverse employment action when the District transferred him away from his position as Project Director of DC CINGS and that the District's proffered explanation for the transfer is a pretext for retaliation. Accordingly, we find "a material dispute on the ultimate issue of retaliation," *Jones*, 557 F.3d at 678, and reverse the district court's grant of summary judgment for the District.

A

We consider first whether a reasonable jury could conclude that Geleta suffered a materially adverse employment action. "An employment action is materially adverse where it 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Pardo-Kronemann v. Donovan*, 601 F.3d 599, 607 (D.C. Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). A "lateral transfer"—that is, a transfer involving "no diminution in pay and benefits"—may qualify as a materially adverse employment action if it "result[s] in 'materially adverse consequences affecting the terms, conditions, or privileges' of the plaintiff's employment." *Id.* (quoting *Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003)).

Geleta contends that he suffered a materially adverse employment action when he was transferred to OA because he lost all supervisory responsibilities and experienced

significantly diminished programmatic responsibilities. *See Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007) ("[W]ithdrawing an employee's supervisory duties . . . constitutes an adverse employment action." (quoting *Stewart*, 352 F.3d at 426) (internal quotation marks omitted)); *id.* at 365 (observing that "reassignment . . . with significantly diminished responsibilities" would constitute an adverse employment action). The District responds that Geleta's new position at OA carried the same salary, benefits, and prestige as his previous position at DC CINGS, and that aside from supervisory responsibilities his new position "was in all other respects comparable" to the old one. Appellees' Br. 26-27. In particular, the District relies on the official position description for Geleta's job as Residential Treatment Center Certification and Monitoring Projects Manager, which lists numerous important responsibilities such as developing and administering "operational programs" and serving as "the single point of coordination" for "all investigations initiated by [OA]." Def. Ex. G.

We think a reasonable jury could find that Geleta's transfer was a materially adverse employment action. To begin with, Geleta produced evidence that he suffered a complete loss of supervisory responsibilities in the transfer. According to the official position description for his job at DC CINGS, as Project Director Geleta supervised a staff of approximately twenty employees. According to his deposition testimony, however, after he moved to OA he did not supervise *any* employees. Susan Curran, Geleta's initial supervisor at OA, confirms this. *See* Decl. of Susan Curran ¶ 8.

Geleta also presented evidence that his position at OA involved narrower and less important programmatic responsibilities than his previous position at DC CINGS. At

his deposition, Geleta testified that his role at DC CINGS was to "try[] to fund and try to get the State to work together to build coherent unified systems" for "children's mental health services." Geleta Dep. 45-46. His official position description further states that he was "responsible for providing leadership in the overall project planning, organization, direction, coordination, monitoring, implementation, and evaluation of all aspects of the DC CINGS Project and its component parts." Def. Ex. K. According to Geleta, his work at OA is very different. In his deposition, he claimed that his current job focuses primarily on three activities: certifying treatment centers, reviewing treatment centers' compliance with District licensing requirements, and monitoring a database of complaints. *See* Geleta Dep. 90-92. No longer is he the leader of a important citywide effort to create a unified children's mental health system. Instead, he certifies, reviews, and monitors. Further, according to Curran, during the time she worked with Geleta at OA he was not "responsible for developing or implementing *any* programs or projects." Decl. of Susan Curran ¶ 8 (emphasis added). Rather, "[h]is main duty was to help [her] clear up a backlog of residential treatment center certification applications." *Id.*

The District contends that these statements by Geleta and Curran are "conclusory" and "lack context" and are therefore improper evidence for summary judgment. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (stating that "conclusory" statements that lack "supporting facts" cannot defeat a summary judgment motion). We disagree. Geleta's and Curran's statements are unlike the sort of allegations unsupported by facts that we have refused to consider in other cases. *See, e.g.*, *Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 466 (D.C. Cir. 2009) (refusing to consider claim where affiant demonstrated no "personal knowledge" of the matter); *Greene*, 164 F.3d at 675 (refusing

to consider allegation that employer hired applicant with "less experience" because affiant provided no "supporting facts" for her claim). Geleta's lack of supervisory responsibilities is a fact known personally to Geleta and Curran, as is the fact that Geleta's main duty at OA was to help Curran clear a backlog of certification applications. No further factual background is necessary to support these claims.

In sum, Geleta provides evidence that he went from overseeing a broad-based mental health unification project at DC CINGS in which he supervised twenty employees to a desk job at OA where he supervised no one and spent his time clearing a bureaucratic backlog. This sort of significant change might well dissuade a reasonable worker from speaking out in support of a charge of discrimination. Geleta has provided sufficient evidence for a reasonable jury to conclude that he suffered a materially adverse employment action.

B

A reasonable jury could also conclude that the District's proffered reasons for transferring Geleta are pretextual. Once an employer articulates a legitimate, nondiscriminatory reason for its adverse employment action, the "central question" on summary judgment is whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated [or retaliated] against the employee on the basis of race." *Brady*, 520 F.3d at 494. Put differently, once an employer offers a nondiscriminatory reason for its action, "to survive summary judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory [or retaliatory] reason." *Kersey v. Wash.*

*Metro. Area Transit Auth.*, 586 F.3d 13, 17 (D.C. Cir. 2009) (quoting *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003)) (alteration in original); *see also Desmond v. Mukasey*, 530 F.3d 944, 963-64 (D.C. Cir. 2008).

In its brief, the District contends that Geleta's transfer was a "legitimate and necessary part of the realignment that [the Department of Mental Health] implemented in an effort to comply with multiple federal funding mandates imposed by [HHS]." Appellees' Br. 33. The District points to the several "priority recommendations" listed in the November 2004 HHS site visit report, as well as the report's warning that failure to comply with the terms and conditions of the 2004 reauthorization grant could "result in additional actions, up to and including possible suspension of funding." Def. Ex. B, at 6. The District claims that "[i]n response to this report, [the Department] determined to restructure and eventually dismantle the DC CINGS program." Appellees' Br. 32.

We think a reasonable jury could find that the District's proffered reasons are a pretext for retaliation.[*] First, the District's reasons for transferring Geleta have changed over time. According to Geleta's deposition testimony, when he asked Thomas in February 2005 why he needed to find a new position, she told him to make up a reason. Geleta Dep. 82. When Geleta asked what she meant, Thomas replied, "[I]t's not performance, you know, it's just—whatever reason you feel—whatever you feel comfortable with." *Id.* Then, in its response to Geleta's first set of interrogatories, the District stated that Geleta was transferred "because the DC CINGS

---

[*] The District concedes that Geleta's statements corroborating Spriggs's complaint were statutorily protected activities. *See* 42 U.S.C. § 2000e-3(a) (protecting from retaliation an employee who "testifie[s], assist[s], or participate[s] in any manner in an investigation" under Title VII).

program was dismantled and Dr. Geleta had been the Project Director for that Program." Def.'s Resps. & Objections to Pl.'s First Set of Interrogs. ¶ 4. On summary judgment and now in its brief to this court, however, the District argues that Geleta was transferred because the Department of Mental Health decided to "realign[]" DC CINGS and implement a "new vision" for the program. Appellees' Br. 33. Such shifting and inconsistent justifications are "probative of pretext." *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 853 (4th Cir. 2001); *see also Domínguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 432 (1st Cir. 2000) ("[W]hen a company, at different times, gives different and arguably inconsistent explanations, a jury may infer that the articulated reasons are pretextual."); *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext.").

Second, a reasonable jury could conclude that the District's claim that it "realigned" DC CINGS to comply with federal funding mandates is itself not credible. The District argued in its summary judgment motion that it reassigned Geleta "as part of its continuing effort to maintain its federal funding for the DC CINGS program." Mem. in Supp. of Def.'s Mot. for Summ. J. 13; *see also id.* ("[I]n an effort to comply with the multiple federal funding mandates imposed by [HHS], [the Department of Mental Health] changed the leadership of the DC CINGS program and sought to take the program in a new direction."). But it is unclear how or why transferring Geleta and revising DC CINGS's "vision" was necessary for the program to maintain its funding. The November 2004 site visit report stated that failure to comply with certain terms and conditions may result in "possible suspension of funding," Def. Ex. B, at 6, but these terms and conditions had nothing to do with Geleta's leadership or DC

CINGS's "vision." Rather, they concerned matters like submitting quarterly reports and filling a vacant position. *See id.* at 5-6. The District has produced no evidence that Geleta was unable to fill positions or submit reports on time, or that transferring him would have any impact on those requirements.

Further, the terms and conditions in the site visit report are the very same terms and conditions found in the 2004 reauthorization grant, which predated the report by at least four months. The District knew about these funding conditions for months, but only after Geleta engaged in protected activity did it decide to transfer him. A jury could reasonably infer pretext from these facts. *See Czekalski*, 475 F.3d at 366 ("[O]ne way for a plaintiff to show that an adverse employment decision was made for a discriminatory [or retaliatory] reason is to 'show[] that the nondiscriminatory explanation the defendant proffered for its decision was false.'" (quoting *Lathram*, 336 F.3d at 1089) (third alteration in original)).

Also undercutting the District's claim that transferring Geleta was part of an effort "to maintain its federal funding for the DC CINGS program" is the fact that the Department dismantled DC CINGS within one year of Geleta's reassignment. If the District's true purpose for "realigning" DC CINGS was to ensure the program's continued funding, it seems strange that the Department eliminated the program so soon thereafter.

Finally, there is evidence in Curran's declaration that Department Director Martha Knisley was angry at Geleta for supporting Spriggs and ordered him to be fired. According to Curran, Thomas told her in early 2005 that Thomas had received instructions from Knisley to fire Geleta. Curran further recounts that when Knisley learned Geleta had instead

been transferred to OA she called Thomas and Curran into her office and angrily upbraided them. Curran says Knisley warned that not firing Geleta was "a grave mistake" and exclaimed, "[D]on't you know what he's done?" Decl. of Susan Curran ¶ 10. Although these two brief accounts could benefit from further factual development, we find them sufficiently probative of pretext to warrant a jury's consideration.

The District protests that Thomas's alleged statement to Curran is "inadmissible hearsay" and therefore not competent summary judgment evidence. *See Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007) ("'[S]heer hearsay' . . . 'counts for nothing' on summary judgment." (quoting *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000))). But Thomas's statement is not hearsay. Federal Rule of Evidence 801(d)(2)(D) excludes from the hearsay rule "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Because Geleta filed suit against the mayor of D.C. in his official capacity, the District is a party to the suit and statements by District employees concerning matters within the scope of their employment are admissible against the District. *See Wilburn v. Robinson*, 480 F.3d 1140, 1148 (D.C. Cir. 2007). Knisley and Thomas were both District employees, and Knisley's alleged instruction to fire Geleta and Thomas's statement relaying this instruction to Curran concerned a matter within the scope of their employment. The statements therefore fall within Rule 801(d)(2)(D).

Viewed in the light most favorable to Geleta, the evidence in the record is sufficient for a reasonable jury to conclude that the District's proffered reasons for transferring him are pretextual and that he was transferred in retaliation

for supporting Spriggs's complaint. The district court erred by granting summary judgment for the District.

## III

For the foregoing reasons, we reverse the judgment of the district court and remand for further proceedings.

*So ordered.*