# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 5, 2007         Decided August 1, 2008

No. 05-5430

CHERYL STEELE,
APPELLANT

v.

ED SCHAFER, SECRETARY OF AGRICULTURE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 02cv00452)

*S. Micah Salb* argued the cause for appellant. With him on the briefs were *Richard H. Semsker* and *Julie Glass Martin-Korb*.

*Alan Burch*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney. *Michael J. Ryan* and *Stratton C. Strand*, Assistant U.S. Attorneys, entered appearances.

Before: GARLAND and GRIFFITH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: On this appeal, Cheryl Steele contends that the district court wrongly dismissed her claims against her former employer, the United States Department of Agriculture, for creating a hostile work environment and unlawfully retaliating against her in violation of Title VII of the Civil Rights Act of 1964. We agree. We therefore reverse the court's grant of summary judgment against Steele on those claims.

I

Steele is an African-American woman who worked as an economist in the U.S. Department of Agriculture (USDA). She alleges that the USDA -- principally through her supervisor, James Johnson -- discriminated against her because of her race in numerous ways, including: intentionally giving her an incompetent assistant; falsely accusing her of misusing government credit cards; unjustifiably denying her a promotion; depriving her of credit for her work; interfering with her professional development by excluding her from important projects; and unreasonably denying her several cash awards.

Steele further alleges that, after she complained about her discriminatory treatment, the Department retaliated against her by, inter alia: giving her the lowest performance rating of her career; awarding her the lowest performance bonus in her branch and half the amount given to all white employees; denying her a "special act award" in 1999; and denying her a cash bonus that was given to every other member of her "Y2K" team that prepared the Department's technical systems for the transition to the year 2000. Steele also asserts that the USDA's harassment forced her to resign in 2000, and that the Department continued to retaliate against her after her resignation by falsely contesting her unemployment benefits at the District of Columbia Office of Unemployment Compensation.

After unsuccessfully pursuing administrative remedies, Steele filed suit in the district court, asserting Title VII claims of discrimination, a hostile work environment, retaliation, and constructive discharge.[1]   The USDA moved for summary judgment on all of the claims, and the court granted the motion. *See* Order Granting Def.'s Mot. for Summ. J., *Steele v. Veneman*, 1:02-cv-00452 (D.D.C. Sept. 28, 2005) ("Order").

The district court first addressed the timeliness of Steele's claims under 29 C.F.R. § 1614.105(a)(1), which requires a federal employee in the Executive Branch to "initiate contact" with an Equal Employment Opportunity (EEO) Counselor in her agency within 45 days of an allegedly discriminatory action. The court noted a "discrepancy" in the record regarding the date of Steele's first contact with an EEO Counselor:   different documents stated that the initial contact occurred in January, February, and June of 1999.  Order at 9 n.3.  The court adopted the June date on the ground that it was the date that Steele alleged "in her complaint and . . . admissions."   *Id.* Accordingly, the court denied relief on those of Steele's claims that it found arose more than 45 days before June 18, 1999.  *Id.* at 11.  The court also rejected Steele's argument that otherwise untimely claims could be included as part of a timely hostile work environment claim.  *Id.*

Next, the district court addressed the USDA's contention that Steele failed to state a prima facie case of discrimination or retaliation because a number of the incidents she alleged did not constitute "adverse employment actions."  *Id.*  The court defined an "adverse employment action" as "an action that results in 'materially adverse consequences affecting the terms, conditions, or privileges of employment.'"  *Id.* (quoting *Brown*

---

[1]The title of Steele's complaint mentions "sex discrimination," but Steele pursues only claims of racial discrimination on appeal.

*v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999)). Under that definition, the court ruled that at least six incidents could not constitute actionable discrimination or retaliation. *Id.* at 12.

Finally, the court granted summary judgment to the USDA on Steele's constructive discharge claim. The court explained that "a constructive discharge claimant must show that (1) her employer intentionally discriminated against her, (2) the employer deliberately made her working conditions intolerable, and (3) aggravating factors justified the claimant's conclusion that she had no option but to end her employment." *Id.* at 14 (citing *Carter v. George Wash. Univ.*, 180 F. Supp. 2d 97, 110 (D.D.C. 2001)). The court held that Steele could not prevail because the record "contains no evidence" of "conditions that were so intolerable, so aggravating, that any reasonable person would have felt compelled to quit." *Id.* at 15.

Without further specification, the district court entered final judgment in favor of the USDA and dismissed the case. Steele now appeals. Her briefs do not dispute the dismissal of her discrimination and constructive discharge claims, *see* Oral Argument Rec. 36:44, 37:00 (acknowledgment by Steele's counsel that she does not raise those claims on appeal), but do challenge the district court's rejection of her retaliation and hostile work environment claims. We address those challenges below.

II

This court reviews a district court's grant of summary judgment de novo. *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). Summary judgment may be granted only if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if it "might affect the

outcome of the suit under the governing law," and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." *Id.* at 255.

Steele argues that the district court's decisions regarding her hostile work environment and retaliation claims rested on three legal errors. We agree. First, in determining that several of Steele's claims were time-barred, the court failed to acknowledge that a genuine issue of material fact existed as to the date of Steele's contact with an EEO counselor. Although the district court's opinion was oblique as to the scope of its ruling, that date affects both Steele's hostile work environment and retaliation claims. Second, regarding Steele's hostile work environment claim, the court adopted a timeliness rule that is inconsistent with the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), and as a consequence never reached the merits of that claim. Third, the court applied a standard for retaliation claims that is inconsistent with the Supreme Court's decision in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006).

Although the government acknowledges that the district court erred, it invites us to review the evidence de novo and affirm on other grounds. We decline the invitation. In light of the tangled record on appeal, we lack confidence that we have all of the information necessary to conduct such a review.

In the following subparts, we present our analysis in more detail. Part II.A addresses the district court's error in granting summary judgment with respect to the timeliness of certain of Steele's claims, notwithstanding the existence of a genuine issue of material fact. Part II.B discusses the court's adoption of an erroneous timeliness rule for Steele's hostile work environment claim. Finally, Part II.C examines the court's application of an inapposite standard for evaluating Steele's retaliation claims.

A

An employee of the federal government who believes that she has been the subject of unlawful discrimination must "initiate contact" with an EEO Counselor in her agency "within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1); *see Weber v. Battista*, 494 F.3d 179, 182-83 (D.C. Cir. 2007); *see also* 42 U.S.C. § 2000e-16. "Because timely exhaustion of administrative remedies is a prerequisite to a Title VII action against the federal government," a court may not consider a discrimination claim that has not been exhausted in this manner absent a basis for equitable tolling. *Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003); *see Greer v. Paulson*, 505 F.3d 1306, 1316-17 (D.C. Cir. 2007).

The district court held that Steele's first contact with an EEO Counselor was June 18, 1999, and that those of her claims involving incidents that took place more than 45 days before that date were therefore barred. Steele's complaint does state that, "[f]rom June 18, 1999, to April, 2000, . . . Steele took issues regarding discriminatory treatment . . . to an EEO counselor at defendant agency." Compl. ¶ 6. But the complaint does not say that this was the only period in which she contacted a counselor, and, as the district court noted, other documents in the record create a "discrepancy" regarding the first contact date. Order at

9 n.3. Steele's admissions to the USDA, submitted as an exhibit to the government's motion for summary judgment, state: "[Steele] contacted an EEO Counselor for the first time in January, 1999, but did not pursue filing a formal complaint at that time. The Plaintiff contacted an EEO Counselor again in June 1999 to file a formal complaint." Pl.'s Admis. ¶ 8. Moreover, the USDA's own Record of Investigation states that Steele "made initial contact with an EEO Counselor on February 22, 1999." JA 185. At the summary judgment stage, the district court was not free to resolve this disputed issue by disregarding the January and February dates.

Although we cannot tell from the district court's Order how many incidents it thought could not be considered based on the erroneously chosen contact date, there is no doubt that the date is material to Steele's hostile work environment and retaliation claims. To the extent the district court relied on the June 1999 date in rejecting or limiting those claims, its judgment is reversed.

B

The district court also rejected Steele's contention that, even if some of her individual claims were time-barred, she could still rely on their underlying events to support her claim that she was subjected to a hostile work environment. *See* Order at 11. Accordingly, the court dismissed that claim without reaching the merits. This was error.

In *National Railroad Passenger Corp. v. Morgan*, the Supreme Court explained that "[h]ostile environment claims are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct." 536 U.S. 101, 115 (2002). Therefore, the Court held, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time

8

period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117. This is precisely the rule that the district court rejected in Steele's case, and the USDA concedes that the court's holding was incorrect. *See* Oral Argument Rec. 28:12.

Notwithstanding the district court's error, the USDA urges us to affirm the judgment on several independent grounds.

First, the Department contends that Steele did not assert a hostile work environment claim in her complaint. This argument is unavailing. The complaint alleges "discrimination," which in principle includes a hostile work environment theory; it also specifically requests Steele's reassignment "to a less hostile working environment." Compl. at 1, 12. Moreover, Steele indisputably raises a constructive discharge claim premised on a hostile work environment, and under *Pennsylvania State Police v. Suders*, 532 U.S. 129, 133-34 (2004), the facts necessary to prove a hostile work environment are a subset of those necessary to prove this type of constructive discharge. Indeed, the government's motion for summary judgment acknowledged that Steele "appears to allege that all the events alleged in the complaint caused her to experience a hostile work environment," and it both sought summary judgment on that claim and responded to it (a response qualified, to be sure, by the observation that it responded to such a claim "to the extent" raised). Def.'s Mem. of P. & A. at 2, 17-19; *see also* Def.'s Mot. for Summ. J. Steele's opposition responded by expressly contesting the government's motion as to that claim. *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 4-6. Given all these circumstances, and in the absence of any apparent prejudice, we think it too late to argue that the plaintiff never asserted such a claim.

Second, the USDA argues that, even if Steele did assert a hostile work environment claim, we should affirm because the district court effectively reached and rejected the merits of that claim by ruling against Steele on her constructive discharge claim. The district court, the government maintains, "rightly interpreted [Steele's hostile work environment claim] to be coextensive with her constructive discharge claim." Appellee's Br. 13. But as the Supreme Court made clear in *Suders*, the standards for hostile work environment and constructive discharge claims are not coextensive. 542 U.S. at 133-34 (2004). To establish hostile work environment claims under Title VII, the Court explained, plaintiffs "must show harassing behavior 'sufficiently severe or pervasive to alter the conditions of [their] employment.'" *Id.* at 133 (alteration in original) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). "Beyond that, . . . to establish 'constructive discharge,' the plaintiff must make a further showing: She must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Id.* at 134. The district court's rejection of Steele's constructive discharge claim on the ground that she did not show working conditions "so intolerable, so aggravating, that any reasonable person would have felt compelled to quit," Order at 15, simply does not address whether Steele successfully made the lesser showing that she experienced severe or pervasive harassment that altered the conditions of her employment. Accordingly, the district court's holding as to the former does not suffice to warrant rejection of Steele's hostile work environment claim.

Finally, the government invites us to affirm the district court's judgment on the alternative basis that Steele's allegations fail as a matter of law to rise to the level of actionable harassment. As noted at the outset, we think the more prudent course is to allow the district court to decide this issue on remand. *See Doe v. DiGenova*, 779 F.2d 74, 89 (D.C.

Cir. 1985) ("'It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.'" (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976))). In remanding the issue, we express no opinion as to whether Steele's hostile work environment claim is meritorious.

C

Title VII's *anti-discrimination* provision makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a). Title VII's *anti-retaliation* provision makes it unlawful for an employer "to discriminate against [an] employee[] . . . because he has opposed any practice" made unlawful by Title VII or "has made a charge, testified, assisted, or participated in" a Title VII proceeding. *Id.* § 2000e-3(a). The district court held that, for retaliatory conduct to be actionable, it must meet the same standard required for discriminatory conduct -- i.e., it must constitute an "adverse employment action," which the court defined as "an action that results in 'materially adverse consequences affecting the terms, conditions, or privileges of employment.'" Order at 11 (quoting *Brody*, 199 F.3d at 457). Under that standard, the court found that a number of Steele's retaliation claims did not survive review. *Id.* at 12.

Nine months after the district court dismissed Steele's claims, the Supreme Court decided *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006). In *Burlington*, the Court expressly rejected the Sixth Circuit's standard for retaliation claims, which was the same standard that circuit applied to substantive discrimination claims and identical to the standard applied by the district court in this case. The Sixth Circuit's view was that, to succeed on a retaliation claim,

"a plaintiff must show an 'adverse employment action,' which [that circuit] defined as a 'materially adverse change in the terms and conditions' of employment." *Id.* at 60 (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004)). Finding that the "language of the substantive provision differs from that of the anti-retaliation provision in important ways," *id.* at 61, the Supreme Court concluded that "Title VII's substantive provision and its anti-retaliation provision are not coterminous," and that the "scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm," *id.* at 67.

As to "how harmful an act of retaliatory discrimination must be in order to fall within the provision's scope," *id.* at 61, the Court "agree[d] with the formulation" this court set forth in *Rochon v. Gonzalez*: "In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 68 (quoting *Rochon*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (internal quotation marks omitted)). That standard does not require consideration either of the severity of the underlying act of discrimination to which the employee objected, or -- as the USDA insists -- of the courage that particular employee demonstrated by reporting it (and hence of her asserted imperviousness to acts of retaliation). Indeed, *Burlington* expressly forecloses such considerations. *Id.* at 69 ("[T]his standard does *not* require a reviewing court or jury to consider the nature of the discrimination that led to the filing of the charge." (internal quotation marks omitted)); *id.* at 68 ("We refer to reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective.").

In light of the Court's decision in *Burlington*, the government concedes that the district court applied the wrong standard for retaliatory conduct. It nonetheless urges us to affirm on the ground that Steele's allegations do not in any event constitute actionable retaliation. Appellee's Br. 19. As we have already explained, the state of the record and the factual intricacies intertwined with some of the allegations make us unwilling to delve into most of the questions that the district court did not address.

We do note, however, that at least four alleged incidents that Steele describes as retaliatory -- the denial of the Y2K award, the issuance of the lowest performance rating of her career combined with the lowest performance bonus in her branch, the denial of the special act award, and the false report to the D.C. Office of Unemployment Compensation contesting her unemployment benefits -- involve conduct that this court or the Supreme Court has already indicated can support a retaliation claim. As the district court correctly noted, we held in *Russell v. Principi* that a cash bonus diminished as a result of a poor performance evaluation can constitute a cognizable action under Title VII. Order at 13 (citing 257 F.3d 815, 819 (D.C. Cir. 2001)); *see also Weber*, 494 F.3d at 184-86 (D.C. Cir. 2007) (holding that two performance evaluations "qualif[ied] as adverse actions" under *Burlington* "insofar as they resulted in . . . losing a financial award or an award of leave"). And in *Burlington*, the Supreme Court indicated that a false report to government authorities can constitute retaliation, citing with approval the Tenth Circuit's finding of "actionable retaliation where [an] employer filed false criminal charges against [a] former employee who complained about discrimination." 548 U.S. at 64 (citing *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 984, 986 (10th Cir. 1996)).

We express no opinion as to whether the actions alleged in Steele's remaining retaliation claims can constitute "materially adverse actions."  On remand, the district court should apply the *Burlington* standard to those allegedly retaliatory actions that it determines took place after Steele complained about discriminatory conduct, and that it finds are otherwise properly before the court.

### III

For the foregoing reasons, we reverse the dismissal of Steele's hostile work environment and retaliation claims and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*