*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CV-27

CHERYL STEELE, APPELLANT

v.

S. MICAH SALB, *et al.*, APPELLEES

Appeal from the Superior Court of the
District of Columbia
(CAM-8556-09)

(Hon. Judith N. Macaluso, Trial Judge)

(Submitted December 11, 2012                    Decided July 3, 2014)

Cheryl Steele filed a brief *pro se*.

*Mariana D. Bravo* and *Matthew D. Berkowitz* were on the brief for appellees.

Before EASTERLY and MCLEESE, *Associate Judges,* and TERRY, *Senior Judge*.

TERRY, *Senior Judge*: Appellant Steele sued her attorney, appellee Salb,

for legal malpractice, seeking damages allegedly resulting from Salb's negligent

representation of Steele in her appeal from the entry of summary judgment on her employment discrimination complaint in federal court (hereafter "Title VII" complaint or action) against her employer. Specifically, Salb failed to challenge the entry of summary judgment on Steele's constructive discharge claim. Salb denied committing malpractice and filed a counterclaim seeking to collect unpaid legal fees from Steele for his work on the appeal and the subsequent settlement of Steele's Title VII action. The trial court granted Salb's motions for summary judgment on the legal malpractice claim and on the counterclaim for unpaid legal fees, and Steele noted this appeal.

Before this court Steele contends that the trial court erred in granting summary judgment on the malpractice claim because there was a genuine issue of material fact as to whether Salb's alleged negligence caused Steele any harm. Steele further argues that the court erred in entering summary judgment on the counterclaim because, first, Salb cannot collect legal fees for his work on the appeal when he committed malpractice, and second, Salb is not entitled to collect fees for his work on the settlement because he withdrew as Steele's counsel before the settlement agreement was completed. For the reasons that follow, we affirm the judgment in favor of Salb on the malpractice claim, affirm in part and reverse in part the judgment

on Salb's counterclaim for unpaid legal fees, and remand for further proceedings consistent with this opinion.

I

A. *The Title VII Action*

Steele, an African American woman, resigned from her position as an agricultural economist at the United States Department of Agriculture ("USDA") on April 3, 2000, and thereafter filed a complaint of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging, among other things, constructive discharge as a result of intolerable working conditions. The EEOC referred Steele's claim to the United States Merit Protection Board ("MPB") for adjudication. On May 3, 2001, in a detailed, twenty-page decision, the MPB concluded that Steele's "allegations [were] insufficient to establish that her working conditions were such that a reasonable person in the employee's position would have felt compelled to retire."

On March 11, 2002, Steele filed a complaint against the USDA in the United States District Court for the District of Columbia in which she alleged, *inter alia*, retaliation, hostile work environment, and constructive discharge. In support of her claims, Steele alleged that she was wrongly accused of misuse of a government credit card, received an incompetent assistant whereas her white counterparts received competent assistants, was forced to work countless hours of overtime (to make up for the inadequate work done by the incompetent assistant) resulting in stress and exhaustion, was denied two cash awards, received a lower performance rating — as well as lower performance awards relative to her white counterparts — after she consulted an equal employment opportunity counselor in 1999, was denied a promotion, was denied an opportunity to work on two grant projects, was initially not credited for her work on a paper, and was not allowed to participate in a conference. The USDA filed a motion for summary judgment, which Steele opposed.

In September 2005 the District Court entered summary judgment in favor of the USDA, concluding that Steele's claims either were untimely or were not supported by sufficient evidence to create a genuine issue of material fact. With respect to Steele's constructive discharge claim, the court concluded that, although "Steele alleges that she resigned against her will, [t]he record . . . contains no

evidence to support Steele's claim that she was constructively discharged based on conditions that were so intolerable, so aggravating, that any reasonable person would have felt compelled to quit."

Steele noted a timely appeal to the United States Court of Appeals for the District of Columbia Circuit. Steele's then-attorney, Saundra White, filed a statement in the appellate court of issues to be raised on appeal, which included issues relating to her retaliation, hostile work environment, and constructive discharge claims. When Ms. White found it necessary to withdraw from the case on account of illness, appellee Salb replaced her. Steele entered into an Appeals Retainer Agreement with Mr. Salb. On July 20, 2007, Salb filed a brief in the United States Court of Appeals that did not address Steele's constructive discharge claim; rather, it argued only her hostile work environment and retaliation claims. At oral argument before the appellate court, Mr. Salb acknowledged that he did not challenge the entry of summary judgment on Steele's constructive discharge claim. *See Steele v. Schafer*, 383 U.S. App. D.C. 74, 77, 535 F.3d 689, 692 (2008) (noting Salb's acknowledgment that he did not raise the constructive discharge issue on appeal).

On August 1, 2008, the United States Court of Appeals reversed the District Court's dismissal of the hostile work environment and retaliation claims and remanded the case for further proceedings on those claims only. *Id.* at 82, 535 F.3d at 697. Steele then entered into a Litigation Retainer Agreement with Salb for his work relating to the claims on remand. With the assistance of Salb, Steele began settlement negotiations with the USDA; however, Salb later withdrew as her attorney, and Steele completed settlement negotiations with the assistance of another attorney. Sometime in June 2009, Steele and the USDA settled the case for $150,000.

## B. *The Legal Malpractice Action*

On November 17, 2009, Steele filed a legal malpractice action against Salb in the District of Columbia Superior Court. In her complaint, Steele alleged that Salb "told the [United States] Court [of Appeals] that he had dropped th[e] claim [relating to constructive termination]." Steele further alleged that Salb, "by failing to include in [his] argument to the Court of Appeals that the District Court had erred when it held that Appellant was not constructively terminated, even though Appellant presented clear and convincing evidence that her work conditions were so intolerable and aggravating that a reasonable person would have felt compelled to quit,"

committed legal malpractice and breached his contract with her. Because "[t]he constructive termination claim would have involved a damage calculation including back pay and front pay in an amount equal to $750,000, damages not available under any of the other claims raised in the Title VII Case," Steele sought $750,000 in damages allegedly resulting from Salb's malpractice.

In April 2010 Salb filed a counterclaim seeking unpaid legal fees (for his work on Steele's appeal and subsequent settlement in the Title VII litigation) in the event that the Superior Court concluded that Salb had not committed legal malpractice. Salb then moved for summary judgment on both Steele's malpractice claim and his own counterclaim for unpaid legal fees. Steele opposed Salb's motion for summary judgment on the malpractice claim, but failed to oppose his motion for summary judgment on the counterclaim for attorney's fees. On August 15, 2011, the Superior Court granted Salb's motion for summary judgment on the counterclaim and ordered Steele to pay him $63,300.42 in unpaid legal fees, finding that "the motion is taken as conceded" and would be "supported by the record" if a judgment or verdict were entered that Salb was not liable for legal malpractice. The next day the court also granted Salb's motion for summary judgment on the malpractice action, concluding that there was no genuine issue of material fact as to whether Salb's

negligence caused Steele any harm. The court ordered that the judgment be held in abeyance until September 2 to provide Salb an opportunity to file a motion to amend the judgment awarding attorney's fees. About two weeks later Salb moved to amend the judgment (to include attorney's fees for his work pursuing the counterclaim), which Steele opposed. On December 6, 2011, the trial court granted Salb's motion to amend the judgment and ordered Steele to pay an additional $17,095 in attorney's fees. Steele timely filed a notice of appeal.

Now proceeding *pro se* before this court, Steele challenges the trial court's orders entering summary judgment in favor of Salb on the malpractice claim and on the counterclaim. She also contests the order granting Salb's motion to amend the judgment.

II

This court reviews challenges to orders granting summary judgment *de novo*. *See, e.g.*, *Franco v. District of Columbia*, 39 A.3d 890, 894 (D.C. 2012). "A party is entitled to summary judgment when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* at 894 (quoting Super. Ct. Civ. R. 56 (c)). "In response to a summary judgment motion . . . the plaintiff . . . must 'set forth' by affidavit or other evidence 'specific facts' . . . which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting Fed. R. Civ. P. 56 (e)). However, "[t]he object of [Rule 56 (e)'s 'specific facts' requirement] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 888 (1990). Accordingly, although "we examine the evidence in the light most favorable to the party opposing the motion, conclusory allegations by the nonmoving party are insufficient to establish a genuine issue of material fact or to defeat the entry of summary judgment." *Franco*, 39 A.3d at 894 (internal quotation marks and citation omitted).

## A. *Steele's Legal Malpractice Claim*

A plaintiff alleging legal malpractice must establish "the applicable standard of care, a breach of that standard, and a causal relationship between the violation and the harm complained of." *Biomet  Inc. v. Finnegan Henderson LLP*,

967 A.2d 662, 664 (D.C. 2009) (citing *O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C. 1982)). In determining whether the plaintiff has established the third element of a legal malpractice claim, the court will often apply the "case within a case" doctrine to determine whether the plaintiff would have prevailed in the underlying litigation in the absence of the attorney's alleged breach. *See, e.g.*, *Breezevale, Ltd. v. Dickinson*, 879 A.2d 957, 960 (D.C. 2005). If the plaintiff cannot establish that she would have "fared better" in the absence of the attorney's negligence, she cannot prevail on her legal malpractice claim. *See, e.g.*, *Chase v. Gilbert*, 499 A.2d 1203, 1212 (D.C. 1985).

As the trial court noted in its order granting summary judgment for Salb on the legal malpractice claim (and as neither party disputes on appeal), it is not difficult to "conclud[e] that the record is sufficient [for Steele] to survive the Motion [for summary judgment] with respect to [standard of care] . . . and breach [of that standard] . . . ." It is undisputed that an attorney-client relationship existed between Salb and Steele, and Steele has stated under oath that Salb admitted that he intended to appeal the constructive discharge claim, but failed to argue it in his brief to the United States Court of Appeals.

We therefore turn to the question whether a genuine issue of material fact remains as to causation.  This requires us to decide whether Steele has shown that it is more likely than not she would have prevailed in her appeal before the United States Court of Appeals in the absence of Salb's failure to challenge the District Court's entry of summary judgment on her constructive discharge claim.  *See Breezevale*, 879 A.2d at 960.  Because the District Court entered summary judgment on Steele's constructive discharge claim, *Steele v. Veneman*, No. 1:02cv452, 2005 U.S. Dist. LEXIS 46696, at 21 (D.D.C. September 29, 2005), our determination whether Steele would more likely than not have prevailed in her appeal to the United States Court of Appeals in the absence of Salb's failure to challenge the entry of summary judgment on the constructive discharge claim requires us to decide whether that Court of Appeals, reviewing the District Court's judgment *de novo*, would more likely than not have found that a genuine dispute remained as to whether Steele was constructively discharged.  *See Steele*, 383 U.S. App. D.C. at 77, 535 F.3d at 692.

When, as in this case, a plaintiff alleges a "hostile-environment constructive discharge" (*i.e.*, "an aggravated case of . . . hostile work environment"),[1]

---

[1]    As the United States Court of Appeals noted, "Steele indisputably raises a constructive discharge claim premised on a hostile work environment."

(continued...)

she must show not only sufficient facts to prove a hostile work environment,[2] but also "working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004); *see Atlantic Richfield Co. v. District of Columbia Comm'n on Human Rights*, 515 A.2d 1095, 1101 (D.C. 1986) (when reviewing constructive discharge claims, "courts have focused on the existence of aggravating conditions in the workplace which would lead a reasonable person to resign"). Therefore, for a constructive discharge claim to survive a motion for summary judgment, a plaintiff cannot merely assert that a genuine issue of material fact exists as to her hostile work environment claim; rather, she must also allege specific facts showing that a genuine issue remains as to the existence of aggravating factors that would have led a reasonable person to resign.[3]

---

[1](...continued)
*Steele*, 383 U.S. App. D.C. at 79, 535 F.3d at 694.

[2]    A plaintiff alleging hostile work environment must show "harassing behavior 'sufficiently severe or pervasive to alter the conditions of [her] employment.' " *Pennsylvania State Police v. Suders*, 542 U.S. 129, 133 (2004) (citations omitted).

[3]    "[T]o prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." 3 LEX K. LARSON, LABOR AND

(continued...)

Although the United States Court of Appeals, in reversing the District Court's entry of summary judgment on Steele's hostile work environment claim, stopped short of addressing the merits of that claim, there can be no doubt that the court would have concluded that there was a genuine issue of material fact as to the first prong of Steele's constructive discharge claim (*i.e.*, the hostile work environment prong). What remains to be determined is whether a genuine issue of material fact remained as to the second prong, *viz.*, whether Steele's working conditions were so aggravating that a reasonable person would have felt compelled to resign. Because we must determine whether Steele more likely than not would have prevailed in her appeal before the United States Court of Appeals, we look only to those portions of the record before us that were available to the United States District Court when it entered summary judgment.[4]

---

[3](...continued)
EMPLOYMENT LAW § 59.05 [8] (2010) (internal quotation marks and citations omitted). "[I]f the plaintiff does not establish a causal connection between the harassment and the resignation, the constructive discharge claim will fail." *Id.* (citations omitted).

[4]    We note that in entering summary judgment on Steele's malpractice claim, the Superior Court considered more than was necessary when determining whether she had alleged sufficient facts to show a genuine issue as to causation. Specifically, the court considered Steele's expert's affidavit, which was submitted as part of the malpractice litigation, and thus was not part

(continued...)

Steele asserts in her brief that, had Salb challenged the District Court's entry of summary judgment on the constructive discharge claim, the United States Court of Appeals would have concluded that a genuine issue of material fact remained as to whether "her working conditions were so intolerable and aggravating that a reasonable person would have felt compelled to quit." In support of this argument, Steele relies primarily on the fact that she prevailed on her appeal from the entry of summary judgment on her hostile work environment claim.[5] Our review of the record shows, however, that to the extent that Steele purported to allege "specific facts" to the District Court to show that there was a genuine dispute as to whether her working conditions were so aggravating that a reasonable person would have been

---

[4](...continued)
of the record before the District Court when it entered summary judgment on her constructive discharge claim. Because we focus our attention only on those portions of the record that were available to the District Court when it entered that judgment, facts newly offered as part of discovery in the instant malpractice action have no bearing on our decision.

[5]    Steele also notes that her expert opined in an affidavit that, more likely than not, she would have prevailed on her constructive discharge claim. As we have noted, however, *supra* note 4, discovery from the instant malpractice litigation has no bearing on our determination whether Steele would more likely than not have prevailed in the constructive discharge litigation. In any event, the affidavit failed to include even a single reference to the record that would support her assertion that the United States Court of Appeals would have reversed on the constructive discharge issue.

compelled to resign, she relied on the same facts that underlay her hostile work environment claim.

In her District Court complaint, Steele alleged that the cumulative effect of her allegedly hostile work environment at the USDA caused her to "resign[ ] against her will." However, in her opposition to the USDA's motion for summary judgment, Steele merely reiterated her hostile work environment allegations and conclusorily reasserted that "she resign[ed] involuntarily." She failed to allege any specific facts that would indicate that her resignation was involuntary, even though she offered more than 500 pages of exhibits in support of her opposition. Instead, Steele merely requested that the District Court "review all materials submitted by both parties," stating that she was "certain" that the court, upon such review, would deny the USDA's motion. In ruling against her on her constructive discharge claim, however, the District Court declared that "[t]he record . . . contains no evidence to support Steele's claim that she was constructively discharged based on conditions that was so intolerable, so aggravating, that any reasonable person would have felt compelled to quit." *Steele v. Veneman*, No. 1:02cv452, 2005 U.S. Dist. LEXIS 46696, at *22 (D.D.C. Sept. 29, 2005).

Steele's reliance on the allegations underlying her hostile work environment claim alone will not permit her constructive discharge claim to survive summary judgment. *See Suders*, 542 U.S. at 147. Not only did she fail to allege specific facts in the District Court litigation that would raise a genuine issue of material fact as to whether working conditions were so intolerable that a reasonable person would have felt compelled to resign; she also failed to show that a genuine dispute remained as to whether she was constructively discharged. We therefore hold that Steele has failed to meet her burden of showing that she would, more likely than not, have prevailed in the United States Court of Appeals in the absence of Salb's negligent failure to challenge the District Court's entry of summary judgment on her constructive discharge claim. It follows that the Superior Court did not err by entering summary judgment on the malpractice claim in favor of Salb, since Steele was unable to allege facts showing that a genuine issue of material fact remained as to causation.

## B. *Salb's Counterclaim for Unpaid Legal Fees*

Salb's motion for summary judgment on his counterclaim for $63,300.42 in unpaid legal fees was unopposed by Steele, who was represented by counsel at the

time. The trial court treated the motion as conceded and, upon determining that the motion was supported by the record, entered summary judgment on the counterclaim. Even when an appellant, as here, has failed to respond to a motion for summary judgment, we have held that it "it is also important to confirm, on the basis of the pleadings, affidavits, and other papers, whether the trial court's summary judgment order[ ] . . . [is] 'appropriate.' " *Lynch v. Meridian Hill Studio Apts., Inc.*, 491 A.2d 515, 520 (D.C. 1985) (quoting Super. Ct. Civ. R. 56 (e)).

The $63,300.42 in unpaid legal fees includes $20,800.42 for Salb's work on Steele's appeal to the United States Court of Appeals, plus $50,000 for his contingency fee from the settlement, minus $7,500 for Steele's retainer payment. Turning first to the fees relating to Salb's work on Steele's appeal, the terms of the Appeal Retainer Agreement and the detailed invoices submitted by Salb clearly show that Steele owed $20,800.42 for legal fees. Although Steele appears to dispute that figure, she points to no facts in the record to support any alleged discrepancy in the amount owed. To the extent that Steele argues Salb would not be entitled to attorney's fees if he committed malpractice, her argument is unavailing in light of her failure to prove, as a matter of law, that Salb committed legal malpractice. We

therefore conclude that there is no genuine issue of material fact as to whether Steele owed Salb $20,800.42 in unpaid legal fees.

We turn next to the fees relating to Salb's work on the settlement ($50,000 in contingency fees, minus $7,500 for Steele's retainer payment). As discussed above, Salb withdrew as counsel for Steele prior to the execution of the settlement agreement. We have held that an attorney whose services are terminated by his client is entitled to the full contingency fee if he has "substantially performed under the contingency fee agreement and was willing to complete his obligation." *Greenberg v. Sher*, 567 A.2d 882, 886 (D.C. 1989). Steele asserts that "[she] did not terminate Mr. Salb; . . . he stated that he refused to work with me any more. He stated to me that he was going to resign [and] would petition the court to be removed based on irreconcilable differences." Salb, on the other hand, contends that he was terminated by Steele before the settlement was finalized. Steele invites our attention to her letter to Salb, dated March 18, 2009, in which she discussed their telephone conversation of March 10. In that conversation Salb "explicitly stated" his desire to resign, which resignation Steele accepted. However, in a letter dated March 16, 2009, Salb stated: "We are in receipt of your letter of March 11, 2009. Contrary to your statement, we did not resign and do not desire to resign from representation of you. We understand,

though, that you wish to terminate our relationship." On March 30, 2009, Salb e-mailed Steele to notify her that he had filed a motion to withdraw as her attorney and that he "regret[ed] [her] decision to terminate [his] representation of [her]." On this record, we conclude that the entry of summary judgment on the counterclaim was inappropriate with respect to the unpaid legal fees for Salb's work on the settlement, since a genuine issue of material fact remained as to whether Salb was "willing to complete his obligation," *Greenberg*, 567 A.2d at 886, or whether he chose to resign. On remand, the resolution of this question will determine whether Salb is, in fact, entitled to any fees for his work on the settlement agreement.

We do not reach the issue whether the Superior Court abused its discretion in granting Salb's motion to amend the judgment to include attorney's fees for his work on the counterclaim. Rather, we defer to the trial court on remand to draw its own conclusions regarding the survival of the counterclaim, which in turn will dictate whether its ruling on the motion to amend the judgment will require modification.

III

In sum, we conclude that the trial court did not err by entering summary judgment in favor of Salb on Steele's legal malpractice claim, since there was no genuine issue of material fact as to whether it was more likely than not that Steele would have prevailed in her appeal before the United States Court of Appeals in the absence of Salb's failure to challenge the District Court's entry of summary judgment on her constructive discharge claim. We further hold, with respect to Salb's counterclaim for unpaid legal fees, that summary judgment was appropriate as to Salb's fees for his work on the appeal of Steele's Title VII claim, but inappropriate as to Salb's fees for his work on Steele's settlement agreement, since a genuine issue of material fact remains as to whether Salb was terminated or chose to resign prior to the completion of that agreement.

Accordingly, the judgment in favor of Salb on the malpractice claim is affirmed. The judgment on Salb's counterclaim is affirmed in part and reversed in part, the order granting Salb's motion to amend the judgment is vacated, and the case is remanded to the trial court for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*